Alan Harris (SBN 146079)
Abigail Treanor (SBN 228610)
HARRIS & RUBLE
6424 Santa Monica Blvd.
Los Angeles, California 90038
Telephone:  323.962.3777
Facsimile:  323.962.3004
aharris@harrisandruble.com
atreanor@harrisandruble.com

David S. Harris (SBN 215224)
NORTH BAY LAW GROUP
116 E. Blithedale Ave., Suite 2
Mill Valley, California 94941
Telephone: 415.388.8788
Facsimile: 415.388.8770
dsh@northbaylawgroup.com

Attorneys for Plaintiff
CRISTINO DIZON

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINO DIZON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>ITO, INCORPORATED doing business as KIKKA, a California Corporation,  and TONNY SOESANTO, an individual, and Doe 1 through and including Doe 10, Defendants. | Case No. 3:10-CV-00239-JSW<br><br>**NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, AND APPPOINTMENT OF CLAIMS ADMINISTRATOR;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Assigned to the Honorable Jeffrey S. White, Courtroom 11<br><br>Date:  October 22, 2010<br>Time:  9:00 a.m.<br>Place:  Courtroom 11, 450 Golden Gate Avenue, San Francisco, CA 94102<br><br>Complaint Filed:  November 17, 2009 |

TO EACH PARTY AND TO COUNSEL FOR EACH PARTY OF RECORD: NOTICE IS HEREBY GIVEN that, on October 22, 2010, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff will move for an order granting conditional certification of a settlement class, preliminary approval of class-action settlement, and appointment of a Claims Administrator.  The Motion will be made and based upon this Notice of Motion; the Declaration of Alan Harris in Support of Motion for Conditional Certification of Settlement Class, Preliminary Approval of Settlement, and Appointment of Claims Administrator; the Declaration of Cristino Dizon in Support of Motion for Preliminary Approval of Class-Action Settlement and Approval of Notice Program, and all of the pleadings, papers, and documents contained in the file of the within action.

DATED:  September 17, 2010                  HARRIS & RUBLE

                                            _____/s/_____
                                            Alan Harris
                                            Abigail Treanor
                                            *Attorneys for Plaintiff*

DATED:  September 17, 2010                  NORTH BAY LAW GROUP

                                            _____/s/_____
                                            David Harris
                                            *Attorneys for Plaintiff*

# <u>TABLE OF CONTENTS</u>

I.      Introduction…………………………………………………………………..…1

II.     Procedural Background……………………………………………………….2

III.    Summary of Plaintiff's Claims for Relief…………………………………..2

        A.    Unpaid Overtime…………………………………………………….2

        B.    Liquidated Damages Under State Law

              and the Fair Labor Standards Act…………………………………2

        C.    Meal-and-Rest-Break Violations……………………………………3

        D.    Continuing Wages……………………………………………………...3

        E.    Wage-Statement Violations…………………………………………3

IV.     Conditional Certification of the Settlement Class Should Be Granted…………3

V.      Summary of the Proposed Settlement……………………………………...6

        A.    The Settlement Fund and the Payment of Claims…………………………..6

        B.    Tax Implications……………………………………………………7

        C.    Plaintiff's Enhancement Award……………………………………7

        D.    Release of Claims……………………………………………………9

        E.    Exclusions (Opt-Outs) and Objections…………………………………10

VI.     Class-Notice Procedure…………………………………………………...10

VII.    Attorney's Fees and Costs………………………………………………...10

VIII.   The Settlement is Fair, Reasonable, and Adequate………………………………11

        A.    The Terms of the Proposed Settlement Are Fair…………………………...11

        B.    Likely Duration of Further Litigation…………………………………...13

        C.    The Amount offered in the Settlement………………………………13

        D.    The Extent of Discovery Completed and

              the Stage of the Proceedings……………………………………….…13

        E.    Experience and the Views of Counsel……………………………………14

        F.    Reaction of Class Members to the Proposed Settlement…………………...14

IX.    Appointment of a Claims Administrator………………………………………14

X.     Proposed Calendar………………………………………………………...14

XI.    Conclusion…………………………………………………………………...15

PLS.' MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEM. OF P. AND A. IN SUPP. THEREOF

# TABLE OF AUTHORITIES

## CASES

Adames v. Mitsubishi Bank, Ltd.,
133 F.R.D. 82 (E.D.N.Y. 1989) ............................................................................................. 4

Barnhill v. Robert Saunders & Co.,
125 Cal. App. 3d 1 (1981) ................................................................................................... 12

Bogosian v. Gulf Oil Corp.,
621 F. Supp. 27 (E.D. Pa. 1985) .......................................................................................... 8

Cook v. Niedert,
142 F.3d 1004 (7th Cir. 1997) ............................................................................................. 8

D'Alauro v. GC Servs. Ltd. P'ship,
168 F.R.D. 451 (E.D.N.Y. 1996) ......................................................................................... 4

Dukes v. Wal-Mart Stores, Inc.,
222 F.R.D. 137 (N.D. Cal. 2004) ......................................................................................... 5

Dunleavy v. Nadler,
213 F.3d 454 (9th Cir. 2000) ..................................................................................... 4, 11, 14

Earley v. Sup. Ct. (Washington Mut. Bank F.A.),
79 CA4th 1420, 95 CR2d 57 (2000) ................................................................................... 12

Elliott v. ITT Corp.,
150 F.R.D. 569 (N.D. Ill. 1992) ........................................................................................... 5

Hanlon v. Chrysler Corp.,
150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 11

In re S. Ohio Correctional Facility,
175 F.R.D. 270 (S.D. Ohio 1997) ........................................................................................ 8

In re S. Ohio Correctional Facility,
191 F.3d 453 (6th Cir. 1999) ............................................................................................... 8

Int'l Molders' & Allied Workers' Local 164 v. Nelson,
102 F.R.D. 457 (N.D. Cal. 1983) ......................................................................................... 4

Jarvaise v. Rand Corp.,
212 F.R.D. 1 (D.C.D.C. 2002) ............................................................................................. 5

Joseph v. Gen. Motors Corp.,
109 F.R.D. 635 (D.C. Colo. 1986) ....................................................................................... 5

Lightbourn v. County of El Paso,
118 F.3d 421 (5th Cir. 1997) ............................................................................................... 5

Linney v. Cellular Alaska P'ship,
151 F.3d 1234 (9th Cir. 1998) ....................................................................................... 4, 14

Mamika v. Barca,
68 Cal. App. 4th 487 (1998) .............................................................................................. 12

Officers for Justice v. Civil Serv. Comm.,
688 F.2d 615 (9th Cir. 1982) ............................................................................................... 4

Officers for Justice v. Civil Serv. Comm.,
459 U.S. 1217 (1983) ........................................................................................................... 4

Sheppard v. Consol. Edison Co. of N.Y., Inc.,
2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. 2002) ............................................. 8

Staton v. Boeing Co.,
327 F.3d 938 (9th Cir. 2001) ........................................................................ 8

Torrisi v. Tucson Elec. Power Co.,
8 F.3d 1370 (9th Cir. 1993) ......................................................................... 11

Wilcox v. Birtwhistle,
21 C4th 973 (1999) ...................................................................................... 12

## STATUTES

Cal. Bus. & Prof. § 17200, et seq. ................................................................. 9

Cal. Civ. Code § 1542 ............................................................................... 9, 10

Cal. Lab. Code § 201 .................................................................................... 3

Cal. Lab. Code § 202 .................................................................................... 3

Cal. Lab. Code § 203 .............................................................................. 12, 13

Cal. Lab. Code § 226 ................................................................................. 3, 5

Cal. Lab. Code § 226.7 ..................................................................... 3, 5, 11, 12

Cal. Lab. Code § 512 ........................................................................... 3, 5, 11

## RULES

Fed. R. Civ. P. 23 ........................................................................ 1, 3, 4, 6, 11

*I.    Introduction.*

   This Court should grant preliminary approval of a $2,451,000 settlement negotiated with Defendants Ito, Inc. dba Kikka ("Kikka") and Tonny Soesanto (collectively, "Defendants").   Plaintiff Cristino Dizon ("Plaintiff") respectfully submits his Memorandum in Support of (1) conditional certification of two Settlement Classes[1] pursuant to Rule 23 of the Federal Rules of Civil Procedure; (2) preliminary approval of the Settlement between Plaintiff and Defendants; (3) approval of the form and method of Class Notice; and (4) appointment of a Claims Administrator.  Given the uncertainty and the risks faced by the parties to the litigation, Plaintiff has determined that a $2,451,000 settlement is the most desirable way to resolve this matter.

   The substantial settlement fund will be divided among all employees who submit claims for unpaid overtime, with 66.6% ($1,632,366) devoted to payment of overtime wages and 33.4% ($818,634) used to pay continuing wages to former employees.  There are approximately 481 current employees who qualify for reimbursement of unpaid overtime, along with some 764 former employees who may also have claims, a total of 1,245 persons to whom claim forms will be mailed.  Again, for the period commencing November 17, 2005 to date, there are approximately 764 individuals who qualify as former employees, potentially entitled to continuing wages.  Assuming all current and former employees submit claims, the gross overtime payment per employee will be over $1,300, representing about three weeks of wages, each.  Former employees who submit claims for continuing wages will receive a gross payment of about $1,070 each, roughly ten days of additional wages per employee.  Since the claims-made response rate in cases

---

[1] The two Settlement Classes, as described in the Settlement Agreement and in Section IV below, to be conditionally certified are described as:

   1) Class A will be comprised of all non-exempt, hourly-paid California employees of Kikka employed in locations other than Kikka's facility located at 431 South Isis Avenue, Inglewood, California ("California Chefs") from four years prior to the filing of the Lawsuit, to the date of Preliminary approval of the Settlement;
   2) Class B will comprised of all California Chefs employed from four years prior to the filing of the Lawsuit, to a date one week prior to or earlier than one week prior to Preliminary approval of the Settlement.

1   of this nature is less than 50%, the actual payments to participating class members will be

2   substantially higher than the foregoing projections would suggest.

3        Plaintiff engaged an economist to assist in a damage analysis and in negotiation of

4   a settlement.  The defense has provided a statistically significant sample of data with

5   respect to services provided by Defendants' employees at the numerous California

6   facilities covered by the settlement.

7   ## II.        Procedural Background.

8        This action was commenced as a putative class action on November 17, 2009.

9   Plaintiff, employed in California by Defendants, alleged that Defendants had violated the

10  California Labor Code and the Fair Labor Standards Act ("FLSA").  Thereafter, the

11  parties exchanged thousands of pages of documents in order to prepare for mediation

12  before a highly competent and experienced wage-and-hour mediator, Alan Berkowitz of

13  Bingham McCutchen LLP.  The settlement conference was held on August 27, 2010.

14  (Harris Decl. ¶ 3, n.1.)  Plaintiff's expert calculated the alleged unpaid overtime of the

15  employees in the sample provided by Defendants.  (Harris Decl. ¶ 11.)

16  ## III.       Summary of Plaintiff's Claims for Relief.

17        ### A.        Unpaid Overtime.

18       It is Plaintiff's contention that, of the sample of employees, most worked overtime

19  for which they were not paid.  In addition, on average, Plaintiff contends there was at

20  least one hour every pay period for which the employees did not receive his or her proper

21  overtime pay.  Kikka has indicated that there are some 481 class members who currently

22  work at its California facilities.  Plaintiff's expert analyzed about 1,440 different bi-

23  monthly pay periods.  Defendant denies all of Plaintiff's allegations and liability.

24        ### B.        Liquidated Damages Under State Law and the Fair Labor

25               Standards Act.

26       Plaintiff contends that he is entitled to liquidated damages under California labor

27  law and the FLSA because, while Kikka paid its employees overtime when they worked

28  in excess of five days per week, it should also have paid them for all hours worked in

1    excess of eight per day.  Also, Plaintiff contends that Defendants failed to pay the correct

2    amount of overtime insofar as they miscalculated the amounts owing by understating its

3    employees' regular rates of compensation.  Defendant denies all of Plaintiff's allegations

4    and liability.

5         *C.      Meal-and-Rest-Break Violations.*

6         Plaintiff contends that Kikka violated sections 226.7 and 512 of the California

7    Labor Code by failing to provide adequate meal and rest breaks to employees.  However,

8    based on the available records and considering Plaintiff's counsel believes it would be

9    quite difficult to certify a class for meal-and-rest period violations, and, if certified, it

10   would be equally difficult to prove damages.  Defendant denies all of Plaintiff's

11   allegations and liability.

12        *D.      Continuing Wages.*

13        Plaintiff contends that Kikka violated sections 201 and 202 of the California Labor

14   Code by failing to pay them and the putative Class Members all wages due and owing

15   upon the termination of their employment.  Defendant denies all of Plaintiff's allegations

16   and liability.

17        *E.      Wage-Statement Violations.*

18        Plaintiff contends that Kikka violated section 226 of the California Labor Code by

19   failing to provide appropriate pay stubs to its employees.  Defendant denies all of

20   Plaintiff's allegations and liability.

21   *IV.    Conditional Certification of the Settlement Class Should Be Granted.*

22        The parties seek conditional certification, pursuant to Rule 23 of the Federal Rules

23   of Civil Procedure, of two Settlement Classes.  For purposes of this Settlement, there will

24   be two Settlement Classes, both of which will be conditionally certified:

25        1) Class "A" will be comprised of all non-exempt, hourly-paid California

26             employees of Kikka employed in locations other than Kikka's facility

27             located at 431 South Isis Avenue, Inglewood, California ("California

28             Chefs") from four years prior to the filing of the Lawsuit, to the date of

1   Preliminary approval of the Settlement;

2   2) Class "B" will comprised of all California Chefs employed from four

3   years prior to the filing of the Lawsuit, to a date one week prior to or earlier

4   than one week prior to Preliminary approval of the Settlement.

5       There is authority to the effect that a pre-certification settlement is subject to a

6   somewhat higher level of scrutiny than one negotiated post-certification.  See, e.g.,

7   Dunleavy v. Nadler, 213 F.3d 454, 458 (9th Cir. 2000).  However, concerns about the

8   rights of absent class members are dispelled by a careful fairness review of the settlement

9   by the trial court and by the procedural protections provided by Rule 23.  Officers for

10  Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459

11  U.S. 1217 (1983).  The trial court has wide discretion in certifying a class for settlement

12  purposes and will be reversed "'only upon a strong showing that the district court's

13  decision was a clear abuse of discretion.'"  Dunleavy, 213 F.3d at 461 (quoting Linney v.

14  Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998)).

15      Class actions are favored, and Rule 23 is to be given a broad, rather than a

16  restrictive, interpretation in order to favor maintaining class actions.  Adames v.

17  Mitsubishi Bank, Ltd., 133 F.R.D. 82, 88 (E.D.N.Y. 1989); Labbate-D'Alauro v. GC

18  Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996).  Rule 23 contains four

19  requirements that must be satisfied:  (1) The class must be so numerous "that joinder of

20  all members is impracticable," (2) there must be "questions of law or fact common to the

21  class," (3) the claims of the representative plaintiffs must be "typical of the claims of the

22  class," and (4) the class representatives must show that they "will fairly and adequately

23  protect the interests of the class."  Fed. R. Civ. P. 23(a).

24      Here, the numerosity requirement is met.  Again, the number of employees within

25  Settlement Class "A" is approximately 481 and within Settlement Class "B" some 764.

26  Given that it has been held that a class of forty is sufficient to justify certification, Int'l

27  Molders' & Allied Workers' Local 164 v. Nelson, 102 F.R.D. 457, 461 (N.D. Cal. 1983),

28  and given that common sense indicates that joinder of all class members is

1   "impracticable," the Class is sufficiently numerous to justify certification.

2        Likewise, the commonality requirement is met.  If there is at least one issue whose

3   resolution will affect all or a significant number of a class' members, then commonality

4   exists.  Lightbourn v. County of El Paso, 118 F.3d 421, 426 (5th Cir. 1997).  A plaintiff is

5   not required to show that there is commonality on *every* factual and legal issue.  Dukes v.

6   Wal-Mart Stores, Inc., 222 F.R.D. 137 (N.D. Cal. 2004); Jarvaise v. Rand Corp., 212

7   F.R.D. 1, 5 (D.C.D.C. 2002).  The common questions of fact and law that affect the

8   Settlement Class include (1) whether the Class Members were paid all of the minimum

9   and overtime wages owing to them, (2) whether the Class Members waived their rights to

10  ten-minute rest periods and thirty-minute meal periods, (3) whether Defendants provided

11  adequate wage statements in compliance with section 226 of the California Labor Code,

12  (4) whether the Class Members whose employment with Defendants had terminated were

13  paid all of their wages by the relevant due date, and (5) whether the Settlement Class

14  Members received the ten-minute rest periods and thirty-minute meal periods mandated

15  by sections 226.7 and 512 of the California Labor Code.  These questions of fact and law

16  predominate over issues that affect only individual Class Members (for example, the

17  individual amounts owing to each Class Member on account of underpaid wages).

18  Moreover, even if it should turn out that the class definition includes Members who have

19  not been injured or who do not wish to pursue claims against Defendants, that is not a bar

20  to certification.  Elliott v. ITT Corp., 150 F.R.D. 569, 575 (N.D. Ill. 1992).  Cf. Joseph v.

21  Gen. Motors Corp., 109 F.R.D. 635, 639–40 (D. Colo. 1986).

22        Plaintiff also meets the typicality requirement.  His claims are very similar to those

23  of any and all absent Class Members.  Plaintiff was a sushi chef who worked at a third

24  party location, similar to the other Class Members.  Plaintiff and Class Members

25  allegedly were not provided adequate minimum wage or overtime compensation, they

26  allegedly were not provided their required rest and meal periods, they allegedly did not

27  receive adequate wage statements, and, to the extent that their employment with

28  Defendants terminated, they allegedly did not receive all wages due upon termination.

1    Finally, Plaintiff is an adequate Class Representative:  He has no conflicts of

2    interest with Class Members, as he shares the Members' likely desire to be compensated

3    in full pursuant to the California Labor Code and FLSA.  (See Harrs Decl., Ex. 5 (Dizon

4    Decl. in Supp. of Mot. for Preliminary Approval of Class-Action Settlement and

5    Approval of Notice Program ("Dizon Decl.")).)  Additionally, Plaintiff is committed to

6    pursuing the claims of the Class Members, and Plaintiff's motivation in retaining counsel

7    and pursuing this action has been to collect unpaid wages for Class Members and for

8    himself.  (See Harris Decl., Ex. 5 (Dizon Decl.).)

9    In addition to the just-described four requirements, the action also must meet one

10    of the non-exclusive factors in Rule 23(b).  Rule 23(b) authorizes class certification if a

11    court determines that "questions of law or fact common to the members of the class

12    predominate over any questions affecting only individual members, and that a class

13    action is superior to other available methods for the fair and efficient adjudication of the

14    controversy."  Fed. R. Civ. P. 23(b)(3).  As briefly discussed with respect to the

15    commonality requirement, questions of law and fact predominate over questions affecting

16    only individual Members.  *The only individual determination is the quantification of*

17    *damages for each*.

18    To put things bluntly, the alternatives to conditional class certification are (1)

19    dozens of separate claim proceedings before the Division of Labor Standards

20    Enforcement, followed by a similar number of *de novo* trials in Superior Court, or, as is

21    more likely, (2) the large majority of Class Members will *never* have their claims

22    determined on the merits.

23    For all of the foregoing reasons, this Court should conditionally certify the

24    Settlement Class.

25    **V.    *Summary of the Proposed Settlement.***

26    **A.    *The Settlement Fund and the Payment of Claims.***

27    According to the Settlement, allocation of the settlement amount shall proceed as

28    follows:

(A)     The total Settlement Amount is $2,451,000.  (Harris Decl. Ex. 1 at ¶ 5.1(R))
Reasonable attorney's fees and costs of Plaintiff's counsel as determined by the Court
shall be subtracted from the Settlement Amount, any appropriate taxes, along with a
possible payment of a reasonable enhancement fee to the named Plaintiff for his service
as Class Representative, and a payment to the Claims Administrator for its costs and fees.
The remaining amount constitutes the Net Funds Available for Settlement, which Funds
shall be disbursed to Eligible Class Members who submit valid Claim Forms, with 66.6
percent allocated to Class A (pro rata based on total hours worked) and 33.4 percent
allocated to Class B (pro rata).

(B)     Settling Defendants will review their payroll records to determine the total
hours recorded worked by each Class Member and provide this information to the
Qualified Settlement Administrator.  Then, the Qualified Settlement Administrator will
divide the Net Funds Available for Settlement into two pools:  one pool representing
66.6% of the remainder, and one pool representing 33.4% of the remainder.  The
Qualified Settlement Administrator will pay each Class Member who has submitted an
Approved Claim a pro rata amount of the fund allocated to Class A Members, based on
his or her relative percent of the total hours worked by Class A claimants.  Similarly, the
33.4% portion shall be distributed to Class Members who have submitted Approved
Claims and are no longer employed by Defendants by giving each a *pro rata* share.

### B.     Tax Implications.

As explained in the Settlement, the Parties recognize that the settlement amounts to
be paid to eligible Class "A" Members are primarily wages for the relief sought in the
lawsuit (not including the enhancement paid to the Representative Plaintiff).  The parties
therefore agree that the Qualified Settlement Administrator shall be responsible for
payment of the appropriate taxes and related reporting.  Any appropriate taxes will be
paid out of the Settlement Amount.

### C.     Plaintiff's Enhancement Award.

The Settlement provides for payment to the named Plaintiff as an incentive award

1    on account of the services that he has rendered as Class Representative.  Plaintiff's

2    enhancement payment entirely at the discretion of this Court, a fact that is referenced in

3    the proposed Notice to Class Members.  Since Mr. Dizon is still assisting counsels' work

4    on this case, his further Declaration with respect to the services he has performed will be

5    submitting in connection with the final approval process.

6         Plaintiff is entitled to an additional amount for the services that he has rendered as

7    a Class Representative.  Incentive awards "are not uncommon and can serve an important

8    function in promoting class action settlements," Sheppard v. Consol. Edison Co. of N.Y.,

9    Inc., 2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. 2002), and "[c]ourts routinely

10   approve incentive awards to compensate named Plaintiffs for the services they provided

11   and the risks they incurred during the course of the class action litigation."  In re S. Ohio

12   Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997), reversed on other grounds,

13   191 F.3d 453 (6th Cir. 1999).  See also Staton v. Boeing Co., 327 F.3d 938, 100 (9th Cir.

14   2001) ("The district court must evaluate [incentive] awards individually, using 'relevant

15   factors includ[ing] the actions the [p]laintiffs have taken to protect the interests of the

16   class, the degree to which the class has benefited from those actions, . . . [and] the amount

17   of time and effort the Plaintiffs expended in pursuing the litigation.'") (quoting Cook v.

18   Niedert, 142 F.3d 1004, 1016 (7th Cir. 1997)).  In light of Plaintiff's willingness to come

19   forward with this action on behalf of Defendants' employees and in light of his efforts in

20   advancing the litigation, an award of up to $15,000 is reasonable under the

21   circumstances.  See, e.g., Cook, 142 F.3d at 1016 (approving an incentive award of

22   $25,000 to a class representative); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 28 (E.D.

23   Pa. 1985) (approving an incentive award of $20,000 apiece to two class representatives).

24   Plaintiff informed counsel of his situation and of his similarity with Class Members.  In

25   furtherance of this action, Plaintiff also has expended a significant amount of time with

26   counsel, having met with counsel in person or by telephone conference several times, and

27   has participated in the full-day mediation required to bring the settlement to fruition.

28        In light of Plaintiff's time spent bringing and maintaining this action, and in light

of Defendants' and Plaintiff's calculated decision to settle, Plaintiff should be awarded a reasonable payment.  As a result of his efforts, Defendants' employees will receive what is anticipated to be full compensation for all unpaid overtime that Plaintiff believe owed under the California Labor Code and FLSA.

### D.     Release of Claims.

According to the Settlement, Members of the Class who do not exercise their right to opt out of the settlement will release the following claims:

> [A]ny and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, damages, restitution, injunctive relief, or a remedy of any other type which are based on, arise out of, or are related to the causes of action of the Lawsuit, including but not limited to, claims made pursuant to the Fair Labor Standards Act; claims made pursuant to the California Labor Code for failure to pay overtime compensation, failure to provide accurate wage statements, failure to provide adequate meal periods and/or rest periods, continuing wages, and failure to pay indemnification for expenditures or losses; claims under California Business and Professions Code section 17200, *et seq.*; and claims for civil penalties pursuant to the California Labor Code and the Private Attorneys General Act of 2004 through the Effective Date of the Agreement.  This release covers all claims for interest, attorneys' fees and costs related to the Lawsuit. Notwithstanding anything to the contrary contained herein, no Class Member herein shall release any potential claims for violations of the Fair Labor Standards Act unless and until s/he affirmatively opts into the Settlement. As they relate to these Released Claims, Class Members waive all rights under California Civil Code Section 1542, or any similar statute of another jurisdiction, and understand that they are releasing known and unknown claims within the scope of this Release.  Section 1542 states:
>
> **"A general release does not extend to claims which the creditor**

1    **does not know about or does not suspect to exist in his or her favor**

2    **at the time of executing the release, which if known by him or her**

3    **must have materially affected his or her settlement with the**

4    **debtor."**

5    (Harris Decl. Ex. 1 at ¶ 13.)  According to the Settlement, only Members of the Class

6    who opt into the FLSA settlement will release the FLSA claims.  (Harris Decl. Ex. 1 at ¶

7    13).

8       **E. *Exclusions (Opt-Outs) and Objections.***

9      As the above makes clear, Settlement Class Members will be given an opportunity

10   to exclude themselves from (in other words, to opt out of) the Settlement, as well as an

11   opportunity to object to the Settlement.  The Notice to Class of Proposed Settlement of

12   Class Action will provide instructions concerning exclusion and objections.

13   ***VI. Class-Notice Procedure.***

14     Following the Court's entry of an order of preliminary approval, Defendants will

15   provide to the Claims Administrator a list of Class Members and their last-known

16   addresses.  The Claims Administrator will then send a Claim Form to each Class Member

17   via first-class mail using the most current mailing-address information available.  If any

18   Claim Form is returned to the Claims Administrator as undelivered before the deadline

19   for Class Members to submit Claim Forms expires, the Claims Administrator will

20   forward the Claim Form to the forwarding address affixed thereto.  Any undelivered

21   Claim Form will be re-sent within five days after the Claims Administrator receives

22   notice that the Form was undeliverable.

23   ***VII. Attorney's Fees and Costs.***

24     The Settlement provides that Plaintiff's attorney's fees incurred in the litigation of

25   this action shall be paid from the Funds Available for Settlement.  In this regard, Plaintiff

26   notes that the allowance or disallowance of an award to Class Counsel is to be considered

27   by the Court separately from the Court's consideration of the fairness, reasonableness,

28   and adequacy of the settlement itself.  Class Counsel will file a motion approving an

award of fees and costs in conjunction with the motion for final approval of class-action settlement.  The motion approving an award of fees and costs will detail the hours expended and the costs forwarded.  At the final fairness hearing, the Court shall have the power to reallocate the fee portion of the proposed settlement to the Class for distribution.  This, it is submitted, is completely reasonable.

### VIII.  The Settlement is Fair, Reasonable, and Adequate.

"The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(c).  According to the Ninth Circuit:

> Assessing a settlement proposal requires a district court to balance a number of factors:  the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

Dunleavy, 2132 F.3d at 458 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  However, certain factors may predominate in different factual contexts.  Indeed, one factor may predominate over *all* the others and provide sufficient grounds for approval of a settlement.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### A.    The Terms of the Proposed Settlement Are Fair.

Settlement is an extremely attractive option for Plaintiff and Defendants, given the reasonable arguments that can be made by both sides.  Plaintiff contends that Defendants violated the California Labor Code by failing to provide Class Members with proper and timely overtime wages.  Further, Plaintiff contends that the ten-minute rest periods and thirty-minute meal periods mandated by sections 226.7 and 512 of the California Labor Code.  Accordingly, Plaintiff contends that Defendants' employees are entitled to "one additional hour of pay at [their] regular rate of compensation for each work day that [a] meal or rest period [w]as not provided."  Cal. Lab. Code § 226.7(b).  In addition, Plaintiff contends that Defendants willfully failed to pay in a timely fashion those Class Members

whose employment with Defendants had been terminated.  Accordingly, Plaintiff contends that those employees are entitled to the continuing wages specified by section 203 of the California Labor Code.  Finally, Plaintiff also contends that Defendants failed to issue pay stubs that contain all of the information required by the California Labor Code.  Defendants vigorously dispute Plaintiff's contentions.

Settlement is an attractive option with respect to Plaintiff's unpaid-overtime claim. Settlement is an attractive option with respect to Plaintiff's meal-and-rest-break claims. Again, as explained above, based on a review of materials produced by Defendants and on discussions with Defendants' counsel, Plaintiff's counsel acknowledges that some may argue that the number of breaks missed by any given Class Member may require a rather individualized inquiry, with a result that class certification might be denied on this claim.  Settlement is also an attractive option with respect to Plaintiff's continuing-wages claim.  The California Labor Code requires that an employer pay continuing wages only if its failure to pay all wages upon termination was willful.  Cal. Lab. Code § 203 It is far from settled whether the failure to pay overtime wages or wages on account of foregone meal and rest breaks results in continuing-wages liability.  See Hon. Ming W. Chin, et al., California Practice Guide:  Employment Litigation ¶ 11:1464.1 (The Rutter Group 2008) ("Employers may argue that because 'wages' and overtime pay have different sources, Lab. C. § 203's waiting time penalties for 'wages' do *not* apply to overtime pay  [See Earley v. Sup. Ct. (Washington Mut. Bank, F.A.) (2000) 79 CA4th 1420, 1430, 95 CR2d 57, 63—'An employee's right to wages and overtime compensation clearly have different sources'; see also Wilcox v. Birtwhistle (1999) 21 C4th 973, 979, 90 CR2d 260, 264— words and phrases given a particular meaning in one part of a statute must be given same meaning in other parts of the statute; Mamika v. Barca (1998) 68 CA4th 487, 493, 80 CR2d 175, 178—penalty of continued 'wages' for late payment is computed by reference to daily straight-time pay (not overtime)].") (emphasis in original).  Cf. Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1, 7 (1981) (explaining that liability under section 203 is improper where an employer had deducted a setoff from an employee's final paycheck

1  at a time when the law governing the propriety of setoffs from employees' paychecks was

2  unclear).  Insofar as it does not result in continuing-wages liability, the extent of

3  Defendants' liability may be reduced.   In addition, settlement is an attractive option with

4  respect to Plaintiff's pay-stub claim.  Plaintiff's counsel is aware that Defendants

5  defenses with respect to Plaintiff's claims and throughout this litigation, Defendant has

6  denied all of Plaintiff's allegations and liability.

7  ### B. *Likely Duration of Further Litigation.*

8  This action has been pending in the court system for nearly a year, and Defendants'

9  employees still remain uncompensated for the alleged overtime violations.  Granting

10  approval of this class-action settlement would create a settlement fund that would remedy

11  those violations.  However, because the putative Class has not been certified and because

12  notices have not been sent out, the likely duration of further litigation would at least be

13  more than an additional year, which would further delay any payment to Defendants'

14  employees.

15  ### C. *The Amount Offered in the Settlement.*

16  The total settlement amount is $2,451,000.  Although this is not the amount that

17  either Plaintiff or Defendants hoped for, it does represent a compromise by the parties in

18  light of the risks and costs of further litigation.  Under the Settlement, the average gross

19  recovery for each Class Member will be several thousand dollars, and most of those who

20  actually submit claims will likely receive a substantial gross benefit.  Given the risks

21  inherent in this case, Plaintiff submits that that is an entirely reasonable amount for the

22  settlement of this case—particularly in light of the fact that Kikka is a privately held

23  entity, working in a niche industry.  (Harris Decl. ¶ 3.)

24  ### D. *The Extent of Discovery Completed and the Stage of the*

25  *Proceedings.*

26  The parties have conducted significant informal discovery.  A substantial amount

27  of information and a substantial number of documents have been exchanged and

28  reviewed as a result of the Rule 26 disclosures and requests for production.  The parties

have conducted numerous informal interviews regarding the background of the case.  In addition, Class Counsel has consulted with and engaged the services of an experienced expert.  In any event, regardless of whether extensive formal discovery has been conducted, "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about the settlement."  Dunleavy, 213 F.3d at 459 (quoting Linney, 151 F.3d at 1239).

### E.  *Experience and Views of Counsel.*

As reflected in the Harris Declaration filed herewith, counsel for Plaintiff has substantial experience in prosecuting class actions, including actions that involve the application of the California Labor Code and the FLSA.  (See Harris Decl. ¶ 2.) Although acknowledging both that some persons whose interests are aligned with those of employees might feel that Defendants should pay more and that some persons whose interests are aligned with those of employers might feel that Defendants should pay less, Plaintiff's counsel is of the opinion that the proposed settlement represents a very reasonable bargain for both sides, given the inherent risks, hazards, and expenses of carrying the case through trial.  (See Harris Decl. ¶ 3.)  Defendants have reached a similar conclusion.

### F.  *Reaction of Class Members to the Proposed Settlement.*

The reaction of Class Members to the proposed settlement cannot be known until preliminary approval is given, notice is sent out, and responses to that notice are received.

## IX.  *Appointment of a Claims Administrator.*

The Settlement provides for the appointment of a Claims Administrator to administer the claims process.  The California-based Claims Administrator chosen by the parties is Gilardi & Co., LLC, a well-established firm.

## X.  *Proposed Calendar.*

The Settlement contemplates, and Plaintiff proposes, the following calendar:

(A)    October 22, 2010:  The Court conditionally certifies the class action,

preliminarily approves the class-action settlement, appoints the Claims Administrator, and approves the form and mailing of the Claim Form.

(B) Within thirty days after entry of an order of preliminary approval, Defendants provide to the Claims Administrator a list of Class Members and their last-known addresses.  (Settlement 5.4.A.)

(C) Within sixty days after entry of an order of preliminary approval, the Claims Administrator sends a Claim Form to each Class Member via first-class mail using the most current mailing-address information available.  (Settlement 5.4.B.)

(D) Within forty-five days after the mailing of a Claim Form by the Claims Administrator, completed Claim Forms, objections, and exclusion requests must be postmarked. (Settlement 5.4.C.)

(E) At least ten days before the hearing on Final Approval, the parties file a joint motion for final approval of the class-action settlement.  Class Counsel also files a motion for fees and reimbursement of costs.  (Settlement 5.2.B.2.)

## XII.   Conclusion.

It is respectfully submitted that the settlement is fair, reasonable, and adequate. The Court should grant conditional certification of the class action, should appoint Gilardi & Co., LLC as the Claims Administrator, should approve the form and means of giving notice, and should set the matter for a final approval hearing.

DATED:  September 17, 2010            HARRIS & RUBLE

                                     _____/s/_____

                                     Alan Harris
                                     Abigail Treanor
                                     *Attorneys for Plaintiff*

DATED:  September 17, 2010            NORTH BAY LAW GROUP

                                     _____/s/_____

                                     David Harris
                                     *Attorneys for Plaintiff*