Alan Harris (SBN 146079)
Abigail Treanor (SBN 228610)
HARRIS & RUBLE
6424 Santa Monica Blvd.
Los Angeles, California 90038
Telephone: 323.962.3777
Facsimile: 323.962.3004
aharris@harrisandruble.com
atreanor@harrisandruble.com

David S. Harris (SBN 215224)
NORTH BAY LAW GROUP
116 E. Blithedale Ave., Suite 2
Mill Valley, California 94941
Telephone: 415.388.8788
Facsimile: 415.388.8770
dsh@northbaylawgroup.com

Attorneys for Plaintiff
CRISTINO DIZON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINO DIZON, individually and on behalf of all others similarly situated, | Case No. 3:10-CV-00239-JSW |
| v. | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT;** |
| ITO, INCORPORATED doing business as KIKKA, a California Corporation, and TONNY SOESANTO, an individual, and Doe 1 through and including Doe 10, Defendants. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Assigned to the Honorable Jeffrey S. White, Courtroom 11 |
| | Date: April 8, 2011 Time: 9:00 a.m. Place: Courtroom 11, 450 Golden Gate Avenue, San Francisco, CA 94102 |
| | Complaint Filed: November 17, 2009 |

TO EACH PARTY AND TO COUNSEL FOR EACH PARTY OF RECORD: NOTICE IS HEREBY GIVEN that, on April 8, 2011, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff will move for an order granting final approval of the class-action settlement reached in the above-captioned action.  The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities in Support Thereof; the Declaration of Alan Harris in Support of Plaintiff's Motion for Final Approval of Class-Action Settlement, filed herewith; the Declaration of Markham Sherwood (Claims Administrator), filed herewith; the Declaration of Cristino Dizon in Support of Motion for Final Approval of Class-Action Settlement; and all of the pleadings, papers, and documents contained in the file of the within action.

This Motion is made pursuant to the October 29, 2010, Order Granting Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator and November 10, 2010, Order Setting Hearing Date on Motion for Final Approval of Class-Action Settlement and Motion for Award of Attorneys' Fees and Costs, which sets a final-approval hearing in the above-captioned matter for April 8, 2011.

DATED:  March 4, 2011                           HARRIS & RUBLE

                                                _____/s/_____

                                                Alan Harris
                                                Abigail Treanor
                                                Attorneys for Plaintiff


DATED:  March 4, 2011                           NORTH BAY LAW GROUP

                                                _____/s/_____

                                                David Harris
                                                Attorney for Plaintiff

# TABLE OF CONTENTS

I.    Introduction..................................................................................1

II.   Procedural Background and Summary of Case............................2

III.  Conditional Certification of the Settlement Classes...................4

IV.   Summary of the Settlement. ......................................................5

      A.    The Settlement Fund and the Payment of Claims..............5

      B.    Tax Implications...................................................................6

      C.    Plaintiff's Enhancement Award. .........................................6

      D.    Attorney's Fees and Reimbursement of Costs. ..................8

      E.    Class Members' Release of Claims. ....................................8

V.    The Provision of Notice to Class Members................................10

VI.   The Settlement Is Fair, Reasonable, and Adequate....................10

      A.    The Strength of Plaintiff's Case. .......................................11

      B.    The Likely Duration of Further Litigation. .......................13

      C.    The Risk of Maintaining Class Status Through Trial. .......14

      D.    The Amount Offered in the Settlement. .............................14

      E.    The Extent of Discovery Completed and the Stage of
            Proceedings. ......................................................................15

      F.    The Experience and Views of Counsel. .............................16

      G.    The Reaction of Class Members to the Proposed Settlement. ...........16

VII.  Conclusion. .................................................................................17

# TABLE OF AUTHORITIES

## CASES

Barnhill v. Robert Saunders & Co.,
  125 Cal. App. 3d 1 (1981) ................................................................13

Bogosian v. Gulf Oil Corp.,
  621 F. Supp. 27 (E.D. Pa. 1985) ........................................................7

Class Pls. v. Seattle,
  955 F.2d 1268 (9th Cir. 1992) ..........................................................10

Cook v. Niedert,
  142 F.3d 1004 (7th Cir. 1997) ............................................................7

Coop. v. DirecTV, Inc.,
  221 F.R.D. 523 (C.D. Cal. 2004)........................................11, 13, 16

Cotton v. Hinton,
  559 F.2d 1326 (5th Cir. 1977) ..........................................................16

Dunleavy v. Nadler,
  213 F.3d  454 (9th Cir. 2000) ............................................11, 14, 16

Earley v. Sup. Ct. (Washington Mut. Bank,
  79 Cal. App. 4th 1420 (2000) ...........................................................12

Flinn v. FMC Corp.,
  528 F.2d 1169 (4th Cir.1975) ...........................................................16

Hanlon v. Chrysler Corp.,
  150 F.3d 1011 (9th Cir. 1998) ..........................................................11

Hanrahan v. Britt,
  174 F.R.D. 356 (E.D. Pa.1997)..........................................................16

In re Activision Sec. Litig.,
  723 F. Supp. 1373 (N.D. Cal. 1989)....................................................8

In re S. Ohio Correctional Facility,
  175 F.R.D. 270 (S.D. Ohio 1997).......................................................7

Linney v. Cellular Alaska P'ship,
  151 F.3d 1011 (9th Cir. 1998) ............................................................7

Mamika v. Barca,
  68 CA4th 487 (1998) ........................................................................13

Murphy v. Kenneth Cole Productions, Inc.,
  40 Cal. 4th 1094 (2007) ....................................................................15

Officers for Justice v. Civil Servs. Comm'n of the City and County of San
  Francisco,
  688 F.2d 615 (9th Cir. 1982) .............................................................11

Rodriguez v. West Publishing Corp.,
  563 F.3d 948 (9th Cir. 2009) ......................................................14, 15

Sheppard v. Consol. Edison Co. of N.Y., Inc.,
  2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. 2002).................................7

Staton v. Boeing Co.,
    327 F.3d 938 (9th Cir. 2001) .......................................................................7

Torrisi v. Tucson Elec. Power Co.,
    8 F.3d 1370 (9th Cir. 1993) .......................................................................11

Van Bronkhorst v. Safeco Corp.,
    529 F.2d 943 (9th Cir. 1976) .....................................................................13

Wilcox v. Birtwhistle,
    21 Cal. 4th 973 (1999) ..............................................................................12

## STATUTES

29 U.S.C. § 216(b) ...........................................................................................3, 4

Cal. Lab. Code § 201 ...........................................................................................3

Cal. Lab. Code § 202 ...........................................................................................3

Cal. Lab. Code § 203 ...........................................................................6, 12, 13, 15

Cal. Lab. Code § 226 ......................................................................................3, 15

Cal. Lab. Code § 226.7 ......................................................................................12

Cal. Lab. Code § 512 .........................................................................................12

## RULES

Fed. R. Civ. P. 23 .........................................................................................3, 4, 10

PL.'S MOT. FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT; MEM. OF P. AND A. IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

Plaintiff Cristino Dizon ("Plaintiff" or "Dizon") respectfully requests this Court grant final approval of the $2,451,000 class-action settlement negotiated with Defendants Ito, Inc. dba Kikka ("Kikka") and Tonny Soesanto (collectively, "Defendants").  On October 29, 2010, this Court issued an Order Granting Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator ("Preliminary Approval Order").  Notice now having been provided to the 1,252 members of the Settlement Classes[1] pursuant to the terms of the Preliminary Approval Order, (see Decl. of Markham Sherwood Re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form and Request for Exclusion Form and Report on Claim Forms and Exclusions Received ("Sherwood Decl.") ¶ 3), and Class Members having had an opportunity to either participate in or exclude themselves from the settlement, Plaintiff now moves for an order granting final approval of the Settlement Agreement and General Release ("Settlement") reached between the Parties.[2]

As explained more fully below, of the 1,252 members of the Settlement Classes notified, 591 have returned timely Claim Forms and 16 have returned late Claim Forms, representing approximately a 48.5 percent return rate.[3]  (Sherwood Decl. ¶ 6.)   All Class Members belong to Class A.  It is estimated that the average settlement payment to members of Class A who submitted a claim will be approximately $1,841 each.  Of the

---

[1] The two Settlement Classes, which were conditionally certified, for settlement purposes only, are described as:
    (a) "Class A" is comprised of all non-exempt, hourly-paid California employees of Kikka employed in locations other than Kikka's facility located at 431 South Isis Avenue, Inglewood, California ("California Chefs") from November 17, 2005, to the date of Preliminary Approval of the Settlement [October 29, 2010].
    (b) "Class B" is comprised of all California Chefs employed from November 17, 2005, to a date one week prior to or earlier than one week prior to Preliminary approval of the Settlement [October 22, 2010].
(Preliminary Approval Order ¶ 2.)
[2] Plaintiff and Defendants shall be collectively referred to as the "Parties."
[3] Plaintiff requests that the Court deem all of the late Claim Forms, postmarked through March 1, 2011, as valid and allow these late claimants to participate in the Settlement.

607 claimants, 189 claimants are also members of Class B.  (Sherwood Decl. ¶ 6.)  It is

estimated that members of Class B will receive, on average, approximately an additional

$2,966 each.[4]  (See Decl. of Alan Harris in Supp. of Mots. for Final Approval of Class-

Action Settlement and Award of Attorneys' Fees and Reimbursement of Costs ("Harris

Decl.") ¶ 5(k).)  Only 35 have elected to opt out of the Settlement.[5]  (Sherwood Decl. ¶

7.)  Not a single objection was filed.  (Sherwood Decl. ¶ 8; Harris Decl. ¶ 8.)  Under the

circumstances, Plaintiff, who is represented by experienced Class Counsel, submits that

the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement

Class.  The Motion should therefore be granted.

## II.     PROCEDURAL BACKGROUND AND SUMMARY OF CASE.

This action was commenced as a putative class action on November 17, 2009.

Plaintiff, employed in California by Defendants, alleged that Defendants had violated the

California Labor Code and the Fair Labor Standards Act ("FLSA").  Plaintiff contended

that Kikka violated the California Labor Code by failing to pay overtime,[6] provide

adequate rest-and-meal breaks,[7] provide adequate wage statements,[8] and accordingly,

---

[4] These amounts represent the *net* recovery each claimant will receive assuming the Court grants $735,300 in attorneys' fees and costs, $22,102.86 in claims administration fees and costs, and a $15,000 enhancement award to the named Plaintiff.  The gross recovery to each member of Class A who submitted a claim is $2,689 and members of Class B will receive an additional $4,331 on average each.  (See Harris Decl. ¶ 5(d).)

[5] Of those 35, 25 individuals filed Claim Forms as well.  (Sherwood Decl., ¶ 7.) The deadline to file requests for exclusion from the Settlement is March 18, 2011. Plaintiff will file a Supplemental Declaration from the Administrator before the hearing on Final Approval with updated information with respect to the number of opt outs and objections filed, if any.

[6] It is Plaintiff's contention that, of the sample of employees, most worked overtime for which they were not paid.  In addition, on average, Plaintiff contends there was at least one hour every pay period for which the employees did not receive his or her proper overtime pay.  Kikka has indicated that there are some 481 class members who currently work at its California facilities.  Plaintiff's expert analyzed about 1,440 different bi-monthly pay periods.  Plaintiff contends that he is also entitled to liquidated damages under California labor law and the FLSA because, while Kikka paid its employees overtime when they worked in excess of five days per week, it should also have paid them for all hours worked in excess of eight per day.  Also, Plaintiff contends that Defendants failed to pay the correct amount of overtime insofar as they miscalculated the amounts owing by understating its employees' regular rates of compensation.  Defendant denies all of Plaintiff's allegations and liability.

[7] Plaintiff contends that Kikka violated sections 226.7 and 512 of the California Labor Code by failing to provide adequate meal and rest breaks to employees.  However, based on the available records and considering Plaintiff's counsel believes it would be

Kikka was liable for unpaid wages, damages, penalties, and continuing wages.[9]  Plaintiff also contended that both Defendants were liable for damages under the FLSA.  Defendant denies all of Plaintiff's allegations and liability.  During the several months leading up to the mediation, which was held on August 27, 2010, the parties exchanged thousands of pages of documents and a statistically significant sample of employee data in order to prepare for mediation.  (Harris Decl. ¶ 4, n.2.)  Plaintiff's expert calculated the alleged unpaid overtime of the employees in the sample provided by Defendants.  (Harris Decl. ¶ 5.)

Under the guidance of Alan Berkowitz of Bingham McCutchen LLP, a highly competent and experienced wage-and-hour mediator, the Parties entered into the Settlement that was presented to the Court for preliminary approval.  On October 29, 2010, the Court "preliminarily determine[d] that the settlement set forth in the Settlement falls within the range of reasonableness, is in the best interests of the Settlement Classes, and appears to be presumptively valid."  (Preliminary Approval Order ¶ 7.)  In the October 29, 2010, Preliminary Approval Order, the Court:  (1) conditionally certified the Settlement Classes as a class action under Federal Rule of Civil Procedure 23 and as a collective action under the FLSA, 29 U.S.C. § 216(b), (Preliminary Approval Order ¶ 2); (2) preliminarily determined that the Settlement falls within the range of reasonableness, is in the best interests of the Settlement Class, and appears to be presumptively valid, (Preliminary Approval Order ¶ 7); (3) approved the form and content of the Class Notice and Claim Form, (Preliminary Approval Order ¶ 9); (4) confirmed Gilardi & Co., LLC to act as the third-party Claims Administrator, (Preliminary Approval Order ¶ 10); (5)

---

quite difficult to certify a class for meal-and-rest period violations, and, if certified, it would be equally difficult to prove damages.  Defendant denies all of Plaintiff's allegations and liability.

[8] Plaintiff contends that Kikka violated section 226 of the California Labor Code by failing to provide appropriate pay stubs to its employees.  Defendant denies all of Plaintiff's allegations and liability.

[9] Plaintiff contends that Kikka violated sections 201 and 202 of the California Labor Code by failing to pay them and the putative Class Members all wages due and owing upon the termination of their employment.  Defendant denies all of Plaintiff's allegations and liability.

1   confirmed Alan Harris and Abigail Treanor of Harris & Ruble as Class Counsel,

2   (Preliminary Approval Order ¶ 12); and (6) confirmed Plaintiff Cristino Dizon as the

3   representative of the Settlement Classes for the class and collective actions (Preliminary

4   Approval Order ¶ 13).  The November 10, 2010, Order Setting Hearing Date on Motion

5   for Final Approval of Class-Action Settlement and Motion for Award of Attorneys' Fees

6   and Costs set the date and time for the Final Approval Hearing.  (See Order Setting

7   Hearing Date on Motion for Final Approval of Class-Action Settlement and Motion for

8   Award of Attorneys' Fees at 2:17–19.)

9   **III.   CONDITIONAL CERTIFICATION OF THE SETTLEMENT**

10  **CLASSES.**

11        On October 29, 2010, the Court conditionally certified, pursuant to 29 U.S.C. §

12  216(b) and Rule 23 of the Federal Rules of Civil Procedure, the following Settlement

13  Classes:

14        (a) "Class A" is comprised of all non-exempt, hourly-paid California

15        employees of Kikka employed in locations other than Kikka's facility

16        located at 431 South Isis Avenue, Inglewood, California ("California

17        Chefs") from November 17, 2005, to the date of Preliminary Approval of the

18        Settlement [October 29, 2010].

19        (b) "Class B" is comprised of all California Chefs employed from

20        November 17, 2005, to a date one week prior to or earlier than one week

21        prior to Preliminary approval of the Settlement [October 22, 2010].

22  (Preliminary Approval Order ¶ 2.)  According to the defense records, there are

23  approximately 1,252 Class Members.  (See Sherwood Decl. ¶ 3.)  Six-hundred seven

24  Class Members filed Claim Forms.  All of the Class Members belong to Class A and 189

25  of the Class Members who filed Claim Forms belong to Class B.  (Sherwood Decl. ¶ 6.)

26  To date, thirty-five individuals have filed requests for exclusion from the Settlement.[10]

27

28        [10] Of those 35, 25 individuals filed Claim Forms as well.  (Sherwood Decl., ¶ 7.)

1   (Sherwood Decl. ¶ 7.)  No objections have been filed.  (Sherwood Decl. ¶ 8; Harris Decl.

2   ¶ 8.)

3   **IV.   SUMMARY OF THE SETTLEMENT.**

4       **A.    The Settlement Fund and the Payment of Claims.**

5       The total settlement amount to be paid by Defendants is $2,451,000.[11]  Reasonable

6   attorney's fees and costs of Class Counsel, as determined by the Court,[12] any appropriate

7   taxes, a reasonable enhancement fee to the named Plaintiff for his service as Class

8   Representative, as determined by the Court, and a payment to the Claims Administrator

9   for its costs and fees shall be subtracted from the settlement amount.  The remaining

10  amount constitutes the Net Funds available for settlement.  The Net Funds shall be

11  disbursed to eligible Class Members who submit valid Claim Forms, with 66.6 percent

12  allocated to Class A and 33.4 percent allocated to Class B, as follows:

13          Class A:  Payment to members of Class A will be divided

14      proportionately among those members of Class A who submitted a valid

15      Claim Form, as a function of the number of hours during they worked as

16      employees of Kikka between November 17, 2005 [four years prior to the

17      filing of the Complaint] and October 29, 2010 [the date of preliminary

18      approval of the Settlement].

19          Class B:  Payment to members of Class B will be divided

20      proportionately among those members of Class B who submitted a valid

21      Claim Form.

22      Assuming the Court grants in full Class Counsel's request for attorneys' fees and

23  reimbursement of costs,[13] Plaintiff's enhancement award,[14] and the costs of claims

---

26  [11] No portion of the $2,451,000 settlement amount will revert to Defendants.

27  [12] Plaintiff's Counsel is filing herewith a Motion for Award of Attorneys' Fees and Reimbursement of Costs.

    [13] Class Counsel is requesting thirty percent of the Settlement Amount, or
28  $735,300, for its attorneys' fees and reimbursement of costs.

    [14] Plaintiff is requesting a $15,000 enhancement award.

administration,[15] the average net payment to each participating member of Class A is approximately $1,841 and members of Class B will receive, on average, an approximately $2,966 as an additional amount.   Accordingly, members of Class B are will receive in total, approximately $4,807 each.   It is clear that these workers, whose hourly rates were only slightly above minimum wage, will receive substantial individual payments.

**B.    Tax Implications.**

As explained in the Settlement, the Parties recognize that the settlement amounts to be paid to eligible members of Class A are primarily wages for the relief sought in the lawsuit (not including the enhancement paid to the representative Plaintiff).  The settlement to be paid to eligible members of Class B are primarily for "damages" pursuant to section 203 of the California Labor Code.  The parties therefore agree that the Claims Administrator shall be responsible for payment of the appropriate taxes and related reporting.  Any appropriate taxes will be paid out of the Settlement amount.

**C.    Plaintiff's Enhancement Award.**

On October 29, 2010, this Court "confirmed Cristino Dizon as the representative of the Settlement Classes for class and collective actions."  (Preliminary Approval Order ¶ 13.)  The Court also "preliminarily approv[ed] [the Settlement's] provision for service payment to the Class Representative."  (Preliminary Approval Order ¶ 7.)  The service payment was "subject to the receipt and consideration by the Court of any objections." (Preliminary Approval Order ¶ 7.)  As of the filing of this Motion, no objections to the Settlement, or specifically, to the provision of a service payment to the named Plaintiff have been received by the Claims Administrator or Class Counsel.  (Sherwood Decl. ¶ 8; Harris Decl. ¶ 8.)[16]  Defendants do not object to Plaintiff's request for an enhancement

---

[15] The Claims Administrator anticipates that the total costs incurred relating to the administration of the Settlement, claims procedure, distribution of payments, through completion of administration will not exceed $22,102.86.  (Sherwood Decl. ¶ 9.)

[16] The Class Notice provided, on page 3, section 4, that "Plaintiff has reserved the right to petition the Court for an enhancement award for his services in bringing this lawsuit and as a class representative in an amount not to exceed $15,000."  (Sherwood Decl., Ex. A [Class Notice].)

award.  In fact, the Settlement provides:  "Subject to the approval by the Court, Kikka agrees that Plaintiff Dizon will receive an enhancement of up to $15,000 for serving as Class Representative subject to an IRS Form 1099."  (Settlement ¶ 7(E).)  Plaintiff submits that his request for an incentive award is entirely within the discretion of this Court and respectfully requests this Court award him $15,000 for the services he has rendered as the class representative.  If granted, a $15,000 enhancement award represents only 0.6 percent of the settlement.  The Declaration of Cristino Dizon ("Dizon Decl.") is filed herewith detailing the significant amount of time and services that Mr. Dizon has performed in connection with this case.  (See generally Dizon Decl.)

Plaintiff is entitled to an additional payment for the services that he has rendered as a Class Representative.  Incentive awards "are not uncommon and can serve an important function in promoting class action settlements," Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. 2002), and "[c]ourts routinely approve incentive awards to compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  In re S. Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997), reversed on other grounds, 191 F.3d 453 (6th Cir. 1999).  See also Staton v. Boeing Co., 327 F.3d 938, 100 (9th Cir. 2001) ("The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the [p]laintiffs have taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . [and] the amount of time and effort the Plaintiffs expended in pursuing the litigation.'") (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1997)).  In light of Plaintiff's willingness to come forward with this action on behalf of Defendants' employees and in light of his efforts in advancing the litigation, an award of up to $15,000 is reasonable under the circumstances.  See, e.g., Cook, 142 F.3d at 1016 (approving an incentive award of $25,000 to a class representative); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 28 (E.D. Pa. 1985) (approving an incentive award of $20,000 apiece to two class representatives).  Plaintiff informed counsel of his situation and of his similarity with Class Members.  In

furtherance of this action, Plaintiff also has expended a significant amount of time with counsel, having met with counsel in person or by telephone conference on numerous occasions over the past two years, reviewed significant amounts of documents and punch detail and has participated in the full-day mediation required to bring the settlement to fruition.  Thereafter, Plaintiff has continued to work with counsel in order to finalize and bring this matter to closure.

In light of Plaintiff's time spent bringing and maintaining this action, and in light of Defendants' and Plaintiff's calculated decision to settle, Plaintiff should be awarded a reasonable payment.  As a result of his efforts, Defendants' current and former employees will receive settlement payments on average of approximately $1,841 each (members of Class A) and on average approximately $4,807 each (members of both Class A and Class B).

**D.    Attorney's Fees and Reimbursement of Costs.**

Class Counsel is requesting up to thirty percent of the total value of the settlement, or $735,300, in attorney's fees and costs.  The support for the request for fees and reimbursement of costs is the subject of a separate Motion, set for hearing concurrently with this Motion, and the payment of this sum will extinguish all claims for fees incurred for all work performed by Plaintiff's counsel in this case from its inception to its conclusion in the coming months.  Suffice it to say that the contemplated fee award is reasonable.  In re Activision Sec. Litig., 723 F. Supp. 1373, 1378–79 (N.D. Cal. 1989) (finding that, in most cases, the benchmark is thirty percent and that an award of thirty percent is substantially justified). In common-fund cases such as this, the Ninth Circuit has established that twenty-five to thirty percent is the "usual" award for attorney's fees. See, e.g., In re Activision Sec. Litig., 723 F. Supp. 1373, 1378–79 (N.D. Cal. 1989) (noting that, in most cases, the benchmark is twenty-five to thirty percent).

**E.    Class Members' Release of Claims.**

According to the Settlement, members of the Settlement Classes who did not exercise their right to opt out of the Settlement will release the following claims:

[A]ny and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, damages, restitution, injunctive relief, or a remedy of any other type which are based on, arise out of, or are related to the causes of action of the Lawsuit, including but not limited to, claims made pursuant to the Fair Labor Standards Act; claims made pursuant to the California Labor Code for failure to pay overtime compensation, failure to provide accurate wage statements, failure to provide adequate meal periods and/or rest periods, continuing wages, and failure to pay indemnification for expenditures or losses; claims under California Business and Professions Code section 17200, et seq.; and claims for civil penalties pursuant to the California Labor Code and the Private Attorneys General Act of 2004 through the Effective Date of the Agreement. This release covers all claims for interest, attorneys' fees and costs related to the Lawsuit. Notwithstanding anything to the contrary contained herein, no Class Member herein shall release any potential claims for violations of the Fair Labor Standards Act unless and until s/he affirmatively opts into the Settlement. As they relate to these Released Claims, Class Members waive all rights under California Civil Code Section 1542, or any similar statute of another jurisdiction, and understand that they are releasing known and unknown claims within the scope of this Release. Section 1542 states:

> "A general release does not extend to claims which the creditor does not know about or does not suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

(Settlement at ¶ 13.) According to the Settlement, only members of the Settlement Classes who filed Claim Forms that included an FLSA opt-in provision will release FLSA claims. (Settlement at ¶ 13). Six-hundred seven (607) Class Members have submitted Claim Forms. (Sherwood Decl. ¶ 6.) Those Class Members, then, are

1   releasing their claims under the California Labor Code and their claims under the FLSA.

2   The remaining Class Members who neither submitted a Claim Form nor elected to opt

3   out of the settlement are releasing only their claims under California law.

4   **V.      THE PROVISION OF NOTICE TO CLASS MEMBERS.**

5         Pursuant to the Preliminary Approval Order, on December 21, 2010, the Claims

6   Administrator mailed Notice Packets consisting of the Class Notice, Claim Form, and

7   Request for Exclusion to the 1,252 members of the Class.  (Sherwood Decl. ¶ 3.)  The

8   Claims Administrator also maintained a toll-free telephone number and staff members of

9   the Claims Administrator were trained in the details of the settlement, so that they could

10  provide information about filling out the Claim Form and receive requests for Notices

11  and Claim Forms.  (Sherwood Decl. ¶ 10.)  Class Members were given until February 4,

12  2011, to submit Claim Forms.  (Sherwood Decl. ¶ 3.)   Because of the Claims

13  Administrator's efforts to find updated addresses, including use of the National Change

14  of Address system and maintenance of a toll-free telephone number, Class Counsel

15  believes that nearly all, if not all Settlement Class Members, received actual notice either

16  by mail or by word-of-mouth.  (Harris Decl. ¶ 7.)

17        Of the 1,252 Notice Packets mailed, 174 were returned as undeliverable.

18  (Sherwood Decl. ¶ 5.)  Seventy-eight updated addresses were found for the 174 returned

19  undeliverable and those Class Members were re-mailed Notice Packets.  (Sherwood Decl.

20  ¶ 5.)  Again, 607 members of the Class submitted Claim Forms, representing

21  approximately 48.5 percent of the Class.  (See Sherwood Decl. ¶ 6.)  Only 35 members

22  have filed requests for exclusion, to date, and 25 of those individuals also filed Claim

23  Forms.  (Sherwood Decl. ¶ 7.)  No objections have been received.  (Sherwood Decl. ¶ 8;

24  Harris Decl. ¶ 8.)

25  **VI.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

26        "The court may approve a settlement . . . that would bind class members only after

27  a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed.

28  R. Civ. P. 23(e)(1)(c).  See also Class Pls. v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)

(stating that class-action settlements should be approved if they are "fundamentally fair, adequate and reasonable."). According to the Ninth Circuit:

> Assessing a settlement proposal requires a district court to balance a number of factors: the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

Dunleavy v. Nadler, 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); see Linney v. Cellular Alaska P'ship, 151 F.3d 1011, 1026 (9th Cir. 1998); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 525–26 (C.D. Cal. 2004).

"The relative degree of importance to be attached to any particular factor depends upon and is dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case," Officers for Justice v. Civil Servs. Comm'n of the City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982), and "district courts have wide discretion in assessing the weight and applicability of each factor," 5 James William Moore et al., Moore's Federal Practice § 23.85(2)(a) (3d ed. 2003). See also Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993). As a matter of fact, all factors do not necessarily apply in every case, and, under certain circumstances, the presence of a single factor alone may provide sufficient grounds for court approval. Id. In the situation presently before the Court, however, every factor cuts in favor of approval. Accordingly, the Court should conclude that the settlement is fair, reasonable, and adequate.

## A.    The Strength of Plaintiff's Case.

Settlement is an extremely attractive option for Plaintiff and Defendants, given the

reasonable arguments that can be made by both sides.  Plaintiff contends that Defendants violated the California Labor Code by failing to provide Class Members with proper and timely overtime wages.  Further, Plaintiff contends that the ten-minute rest periods and thirty-minute meal periods mandated by sections 226.7 and 512 of the California Labor Code were not provided.  Accordingly, Plaintiff contends that Defendants' employees are entitled to "one additional hour of pay at [their] regular rate of compensation for each work day that [a] meal or rest period [w]as not provided."  Cal. Lab. Code § 226.7(b).  In addition, Plaintiff contends that Defendants willfully failed to pay in a timely fashion those Class Members whose employment with Defendants had been terminated.  Accordingly, Plaintiff contends that those employees are entitled to the continuing wages specified by section 203 of the California Labor Code.  Finally, Plaintiff also contends that Defendants failed to issue pay stubs that contain all of the information required by the California Labor Code.  Defendants vigorously dispute Plaintiff's contentions.

Settlement is an attractive option with respect to Plaintiff's unpaid-overtime claim.  Additionally, settlement is an attractive option with respect to Plaintiff's meal-and-rest-break claims.  Again, as explained above, based on a review of materials produced by Defendants and on discussions with Defendants' counsel, Plaintiff's counsel acknowledges that some may argue that the number of breaks missed by any given Class Member may require a rather individualized inquiry, with a result that class certification might be denied on this claim.  Settlement is also an attractive option with respect to Plaintiff's continuing-wages claim.  The California Labor Code requires that an employer pay continuing wages only if its failure to pay all wages upon termination was willful.  Cal. Lab. Code § 203 It is far from settled whether the failure to pay overtime wages or wages on account of foregone meal and rest breaks results in continuing-wages liability.  See Hon. Ming W. Chin, et al., California Practice Guide:  Employment Litigation ¶ 11:1464.1 (The Rutter Group 2008)  ("Employers may argue that because 'wages' and overtime pay have different sources, Lab. C. § 203's waiting time penalties for 'wages' do not apply to overtime pay  [See Earley v. Sup. Ct. (Washington Mut. Bank, F.A.)

(2000) 79 CA4th 1420, 1430, 95 CR2d 57, 63—'An employee's right to wages and overtime compensation clearly have different sources'; see also Wilcox v. Birtwhistle (1999) 21 C4th 973, 979, 90 CR2d 260, 264—words and phrases given a particular meaning in one part of a statute must be given same meaning in other parts of the statute; Mamika v. Barca (1998) 68 CA4th 487, 493, 80 CR2d 175, 178—penalty of continued 'wages' for late payment is computed by reference to daily straight-time pay (not overtime)].") (emphasis in original).  Cf. Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1, 7 (1981) (explaining that liability under section 203 is improper where an employer had deducted a setoff from an employee's final paycheck at a time when the law governing the propriety of setoffs from employees' paychecks was unclear).  Insofar as it does not result in continuing-wages liability, the extent of Defendants' liability may be reduced.   In addition, settlement is an attractive option with respect to Plaintiff's pay-stub claim.  Plaintiff's counsel is aware of Defendants' defenses with respect to Plaintiff's claims and throughout this litigation, Defendant has denied all of Plaintiff's allegations and liability.

### B.    The Likely Duration of Further Litigation.

This action has been pending in the court system for over a year and three months, and Defendants' employees still remain uncompensated for the alleged overtime violations.  Granting final approval of this class-action settlement would create a settlement fund that would remedy those violations.  In fact, members of Class A will look to receive, on average, approximately $1,841 each and members of Class B will look to receive, on average, an additional $2,966 each.  In the absence of final approval of the settlement, the likely duration of further litigation of this action is in excess of a year, given that the putative Class would still have to be certified as to Plaintiff's state-law claims for relief and a collective action would still have to be certified as to Plaintiff's claims under the FLSA.  As courts have explained, "unless [a] settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 526.

Indeed, settlement is encouraged by courts when possible.  E.g., Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").  Given these considerations, and in light of the substantial amounts to be provided to participating Class Members, the Court should grant final approval of the settlement.

**C.     The Risk of Maintaining Class Status Through Trial.**

With respect to the risk of maintaining class-action status up to and throughout trial, Plaintiff acknowledges that there is no guarantee that class certification could be obtained on the scope agreed to in the Settlement and that class certification might not occur at all if the issue were litigated.  As explained above in connection with the strength of Plaintiffs' case, Plaintiffs' claims inherently require a somewhat individualized inquiry, and, if Defendants were to successfully oppose a contested motion for certification, the Class would recover nothing.  Accordingly, this factor also weighs in favor of final approval.

**D.     The Amount Offered in the Settlement.**

The total amount set aside for Class Members is $2,451,000.  Although this is not the amount that either Plaintiffs or Defendants hoped for, settlement represents a compromise by the parties in light of the risks and costs of further litigation.  The average gross recovery to each Class Member is over several thousands of dollars, a significant recovery for employees who were earning the minimum wage.

In determining whether the amount offered in settlement is fair, the Ninth Circuit has suggested that a court must compare the settlement amount to the parties' "estimates of the maximum amount of damages recoverable in a successful litigation." See In re Mego Financial Corp. Securities Litig., 213 F.3d 454, 459 (9th Cir. 2000).  However, the Ninth Circuit has more recently held that, in making such a comparison, a court need not

consider the potential enhancement of damages through penalties.  See Rodriguez v.

West Publishing Corp., 563 F.3d 948, 955 (9th Cir. 2009).  In Rodriguez, as here, a

substantial portion of the potential damages were funds that are theoretically recoverable

as penalties:  In Rodriguez, treble damages were at issue; here, penalties for violations of

sections 203 and 226 of the California Labor Code are at play.[17]  Rodriguez teaches that,

in considering whether to approve an antitrust class-action settlement, a court may

determine that a settlement is "reasonable even though [the court] evaluated the monetary

potion of the settlement based only on an estimate of single damages."  Rodriguez, 563

F.3d at 955.  Similarly, here, the Court may consider the settlement based only on an

estimate of actual damages, putting the penalty aspects of the case to the side in the

process.

Given the uncertainty and risks faced by the parties to this litigation, it is

reasonable for the Court to grant final approval of the $2,451,000 settlement.  The

amount is particularly substantial in light of the additional delay in securing any payment

that would occur were the settlement not approved.  After all, even if Plaintiff prevailed

at trial, an appeal by Defendants could delay compensating Class Members by years.

Quite simply, the settlement amount here is adequate and reasonable in the face of the

inherent risks involved with further litigation.

### E.    The Extent of Discovery Completed and the Stage of Proceedings.

The parties have conducted significant informal discovery.  A substantial amount

of information and a substantial number of documents have been exchanged and

reviewed as a result of the Rule 26 disclosures and through the exchange of a statistically

significant sample of employee punch detail and compensation information.  The parties

have conducted numerous informal interviews regarding the background of the case.  In

addition, Class Counsel has consulted with and engaged the services of an experienced

expert, with whom Class Counsel spent hours reviewing the sample of employee punch

---

[17] In Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2007), the California Supreme Court compared Labor Code penalties such as those at issue in this case to treble damages.  Murphy, 40 Cal. 4th at 1103–04.)

detail in order to analyze Defendants' potential violations.  In any event, regardless of whether extensive formal discovery has been conducted, "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about the settlement." Dunleavy, 213 F.3d at 459 (quoting Linney, 151 F.3d at 1239).

### F.   The Experience and Views of Counsel.

In assessing the adequacy of the terms of a settlement, a trial court is entitled to—and should—rely upon the judgment of experienced counsel for the parties.  See Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotations omitted).  See also Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977).  The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir.1995).  Indeed, when evaluating a proposed settlement, absent fraud, collusion, or the like, a court should be hesitant to substitute its own judgment for that of counsel.  See Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir.1975); Hanrahan v. Britt, 174 F.R.D. 356, 366-368 (E.D. Pa.1997) (finding that a presumption of correctness applies to a class-action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery).

Here, Class Counsel has considerable experience in litigating employment matters, class actions, and other complex litigation.  (Harris Decl. ¶¶ 2, 3.)  Class Counsel has concluded that the terms of the settlement are fair, adequate, reasonable, and in the best interests of the Class as a whole. (Harris Decl. ¶ 4.)  This factor weighs in favor of approving the settlement.

### G.   The Reaction of Class Members to the Proposed Settlement.

The reaction of Class Members to this settlement has been entirely favorable.  As explained by the Central District, "[i]t is established that the absence of a large number of

objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members" <u>Nat'l Rural Telecomms. Coop.</u>, 221 F.R.D. at 529. In the matter presently before the Court, not a single objection has been filed. (Sherwood Decl. ¶ 8; Harris Decl. ¶ 8.) Only 35 Class Members have filed requests for exclusion, representing only 2.5 percent of the total Class.[18] (Sherwood Decl. ¶ 7.)

## VII. CONCLUSION.

The parties have reached an unobjected-to settlement that disposes of the risks, costs, and delay associated with further litigation. Defendants deny any and all liability in this action, but, through settlement, seek to obtain closure. For reasons set forth above, the Court should grant final approval, particularly if no objection is lodged to the settlement.

DATED: March 4, 2011                    HARRIS & RUBLE

                                        _____/s/_____
                                        Alan Harris
                                        Abigail Treanor
                                        Attorneys for Plaintiff


DATED: March 4, 2011                    NORTH BAY LAW GROUP

                                        _____/s/_____
                                        David Harris
                                        Attorney for Plaintiff

---

[18] Of those 35, 25 of those individuals filed Claim Forms as well. (Sherwood Decl., ¶ 7.)