1
2
3
4
5
6
7
8
9
10

Alan Harris (SBN 146079)
Abigail Treanor (SBN 228610)
HARRIS & RUBLE
6424 Santa Monica Blvd.
Los Angeles, California 90038
Telephone:  323.962.3777
Facsimile:  323.962.3004
aharris@harrisandruble.com
atreanor@harrisandruble.com

David S. Harris (SBN 215224)
NORTH BAY LAW GROUP
116 E. Blithedale Ave., Suite 2
Mill Valley, California 94941
Telephone: 415.388.8788
Facsimile: 415.388.8770
dsh@northbaylawgroup.com

Attorneys for Plaintiff
CRISTINO DIZON

11
12
13

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CRISTINO DIZON, individually and on behalf of all others similarly situated,

v.

ITO, INCORPORATED doing business as KIKKA, a California Corporation,  and TONNY SOESANTO, an individual, and Doe 1 through and including Doe 10,
                                        Defendants.

Case No. 3:10-CV-00239-JSW

**DECLARATION OF ALAN HARRIS IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND COSTS**

Assigned to the Honorable Jeffrey S. White, Courtroom 11

Date:  April 8, 2011
Time:  9:00 a.m.
Place:  Courtroom 11, 450 Golden Gate Avenue, San Francisco, CA 94102

Complaint Filed:  November 17, 2009

ALAN HARRIS declares under penalty of perjury under the laws of the State of California and the United States as follows:

1.      I am a member in good standing of the State Bar of California and am one of the attorneys for Plaintiff Cristino Dizon ("Plaintiff" or "Dizon") in the within action. I make this Declaration on behalf of Plaintiff and in support of the Motions for Final Approval of Class-Action Settlement and Award of Attorneys' Fees and Reimbursement of Costs. If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

2.      I have been and am licensed as an attorney, first in Illinois (1974) and later in California (1989). I am a graduate of the University of Illinois (A.B. 1970; J.D. 1974). After graduation from law school in January of 1974, I was hired as a litigation associate at a plaintiffs' antitrust boutique in Chicago, Illinois, Freeman, Freeman & Salzman.[1] I became a partner in that firm in 1980, and started my own practice in 1982. I speak before professional organizations on topics of interest to the Bar. I have represented plaintiffs in complex business litigation for over thirty-six years. E.g., Illinois v. Ill. Brick Co., Inc., 431 U.S. 720 (1977); In re My Left Hook, LLC, 129 Fed. Appx. 352 (9th Cir. 2005); Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); In re Blue Coal Corp., 986 F.2d 687 (3d Cir. 1993); In re Blue Coal Corp., 206 B.R. 730 (M.D. Pa. 1997); U.S. v. Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and vacated in part, and remanded sub. nom. U.S. v. Tabor Ct. Realty Corp. 803 F.2d 1288 (3d Cir. 1986), cert. den. sub. nom. McClellan Realty Co. v. U.S. 483 U.S. 1005 (1987); In re Uranium Antitrust Litig., 503 F. Supp. 33 (N.D. Ill. 1981); In re Grand Jury, 469 F. Supp. 666 (M.D. Pa. 1980); In re Anthracite Coal Antitrust Litig., 82 F.R.D. 364 (M.D.

---

[1] Of my still-living partners in Freeman, Freeman & Salzman, a firm that dissolved in 2007, each became a senior partner in a leading national law firm. Lee Freeman, Jr. is now the Chair of the Antitrust Litigation Practice at Jenner & Block. Jerrold Salzman is of counsel at Skadden, Arps, Slate, Meagher & Flom. Tyrone Fahner is a partner at Mayer Brown, having served as its co-Chairman from 1998–2001 and its Chairman from 2001–2007. Today, Harris & Ruble maintains an active class-action practice for plaintiffs in antitrust, bankruptcy, consumer, and labor-law matters.

Pa. 1979), <u>In re Folding Carton Antitrust Litig.</u>, 83 F.R.D. 251 (N.D. Ill. 1978); <u>In re Anthracite Coal Antitrust Litig.</u>, 78 F.R.D. 709 (M.D. Pa. 1978); <u>In re Masterkey Antitrust Litig.</u>, 1977 U.S. Dist. LEXIS 12948 (D. Conn. 1977) (six week jury trial for Plaintiffs); <u>A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.</u>, 68 F.R.D. 383 (N.D. Ill. 1975); <u>In re Cement-Concrete Block, Chicago Area, Grand Jury Proceedings</u>, 381 F. Supp. 1108 (N.D. Ill. 1974); <u>Lisa Frank, Inc. v. Brown</u>, 2006 Westlaw 1237277 (Cal Ct. App. 2006); <u>Parmet v. Lapin</u>, 2004 Cal. App. Unpub. LEXIS 5217 (June 1, 2004).  I have gone to jury trials on behalf of plaintiffs and, once, a bench trial for defendant, Allstate Insurance Company.  I have represented employees in numerous disputes concerning their receipt of pay in connection with their employment, both before the State of California Division of Labor Standards Enforcement and in state and federal courts in California.  <u>E.g.</u>, <u>Milligan v. Am. Airlines, Inc.</u>, 2009 U.S. App. LEXIS 9180 (9th Cir. April 30, 2009); <u>Jacobs v. CSAA Inter Ins. Bureau</u>, 2009 U.S. Dist. LEXIS 37153 (N.D. Cal. May 1, 2009); <u>Escobar v. Whiteside Constr. Corp.</u>, 2008 U.S. Dist. LEXIS 68439 (N.D. Cal. 2008) (certification of collective action); <u>Tremblay v. Chevron Stations, Inc.</u>, 2008 Westlaw 2020514 (N.D. Cal. 2008) (certification of collective action); <u>Perez v. Maid Brigade, Inc.</u>, 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. 2007) (denial of employer's effort to enforce arbitration clause in employment agreements); <u>Hoffman v. Uncle P Prods.</u>, 2008 Cal. App. Unpub. LEXIS 3609 (three-year statute of limitations applies to section 203 claims for continuing wages); <u>Bithell v. E.P. Mgmt. Servs., LP</u>, 2007 Westlaw 4216854 (Cal. Ct. App. 2007) (sustaining class settlement of entertainment-industry employees section 203 and 226 claims against entertainment-industry "payroll companies" and studios); <u>DuPont v. Avalon Hollywood Servs., Inc.</u>, 2007 Westlaw 93386 (Cal. App. 2007); <u>Gregory v. Superior Court</u>, 2004 Westlaw 2786357 (Cal. Ct. App. 2004) (employee of entertainment-industry "payroll company" not subject to arbitration of dispute under collective bargaining agreement). The undersigned has also been appointed lead class counsel in many settled class actions. <u>E.g.</u>, <u>Kang v. Albertson's, Inc.</u>, C.D. Cal. Case No. 2:07-CV-00894-CAS-FFM

($6,637,500 settlement of labor-law claims); Tremblay v. Chevron Stations, Inc., N.D. Cal. Case No. CV 07-6009 EDL ($4,500,000 settlement of labor-law claims); Doty v. Costco Wholesale Corp., C.D. Cal. Case No. CV 05-3241 FMC (JWJx) ($7,500,000 distributed to class members for FLSA and California Labor Code section 203 and 226 violations); Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement on behalf of service-station employees in California); Alfano v. Int'l Coffee & Tea, LLC, C.D. Cal. Case No. CV 04-8996 SVW (CWx) (FLSA and California Labor Code section 226, 510, and 1194 case); Jenne v. On Stage Audio Corp., C.D. Cal. Case No. CV 04-2045 CAS (PJWx) (FLSA and California Labor Code section 203 violations); Hansen v. Advanced Tech Security Servs., Inc., Los Angeles Superior Court Case No BC 367175 ($1,050,000 settlement of labor-law claims); Ross v. Human Resources, Inc., Los Angeles Superior Court Case No. BC 351506 (California Labor Code section 203 case); Harrington v. Manpay, LLC, Los Angeles Superior Court Case No. BC 312171 ($1,000,000 distributed to class members in a section 510 and section 1194 case); Brackett v. Saatchi & Saatchi, Los Angeles Superior Court Case No. BC 298728 (over $170,000 distributed to class members in an FLSA and section 203 case); Readmond v. Straw Dogs, Inc., Los Angeles Superior Court Case No. BC257394 (over $100,000 distributed to class members in a section 203 case); Greenberg v. EP Mgmt. Servs., LP, Los Angeles Superior Court Case No. BC 237787 ($5,348,000 settlement of claims under sections 203 and 226 of California Labor Code); Angel Paws, Inc. v. Avalon Payroll Servs., Inc., Los Angeles Superior Court Case No. BC 188982 (over $450,000 distributed to class members in a section 203 case); Saunders v. Metro Image Group, San Diego Superior Court Case No. GIC 809753 (California Labor Code section 203 case); Stratford v. Citicorp West FSB, Monterey Superior Court Case No. M 81026 ($950,000 settlement of labor-law claims); Deckard v. Banco Popular North America, related to Silva v. Banco Popular North America, C.D. Cal. Case No. CV 08-6709 JFW (RZx) ($1,050,000 settlement of California Labor Code and FLSA claims).  The majority of the foregoing cases were undertaken on a contingent-fee basis, and Harris & Ruble has

1  sufficient financial resources to engage in that sort of practice.

2      3.    Abigail Treanor, who is an attorney at Harris & Ruble working on the

3  above-captioned matter, has worked with me on numerous class-action matters and has

4  been appointed class and/or collective-action counsel in connection therewith. E.g.,

5  Deckard v. Banco Popular North America related to Silva v. Banco Popular North

6  America, Central District of California Case No. CV 08-6709 JFW (RZx); Lipps v.

7  International International Coffee & Tea, LLC, Los Angeles Superior Court Case No. BC

8  405858; Valenzuela v. ARES Group Incorporated, Los Angeles Superior Court Case No.

9  BC 395292; Lynch v. Universal Security Concepts, Inc., Central District of California

10  Case No. CV-07-05908 ABC (CTx), and; Ambers v. Treasure Entertainment, Inc.,

11  Central District of California Case No. CV-09-8953 SVW (RZx).  She has represented

12  employees in numerous labor-law disputes at Harris & Ruble.  E.g., Greenberg v. EP

13  Management Services, LP, Los Angeles Superior Court Case No. BC 237787; Brackett v.

14  Saatchi & Saatchi, Los Angeles Superior Court Case No. BC 298728; Jenne v. On Stage

15  Audio Corporation, United States District Court for the Central District of California

16  Case No. CV 04-2045 CAS (PJWx); Harrington v. Manpay, LLC, Los Angeles Superior

17  Court No. BC 312171; Alfano v. International Coffee & Tea, LLC, United States District

18  Court for the Central District of California Case No. CV 04-8996 SVW (CWx); Hansen

19  v. Advanced Tech Security Services, Inc., Los Angeles Superior Court, Case No:  BC

20  367175; Ophuls v. Sessions Payroll Management, Inc., Central District of California

21  Case No. CV-07-04904 VBF (SSx).

22      4.    In negotiating the Settlement, I have very carefully considered the risks of

23  further litigation.[2]  I have also carefully considered the expenses involved in further

24  litigation, the potential recovery to the Class if the case were fully litigated through trial,

25  _____

26  [2] The parties concluded settlement discussions under the guidance of an
    experienced wage and hour mediator, Alan Berkowitz of Bingham McCutchen LLP.  The
27  formal mediation was held on August 27, 2010.  During the several months leading up to
    the mediation, the parties exchanged thousands of pages of documents and a statistically
28  significant sample of employee data in order to prepare for mediation.

1   and the probability of any recovery for Class Members being delayed in the event of a

2   successful trial outcome by the taking of an appeal.  After a careful analysis of all of the

3   relevant factors, including the Defendants' financial condition and their role in a niche

4   industry, I have formed and now hold the opinion that the terms and conditions embodied

5   in the Settlement are fair, reasonable, and equitable; that they represent a good result; and

6   that the risks and delay of further litigation likely outweigh the potential benefits that

7   might be derived from further litigation.

8         5.      Plaintiff's expert, Evelyn Carlson, assisted the undersigned in preparation

9   for mediation.  Based on my analysis with Ms. Carlson of documents produced by the

10  defense, as well as other communications with defense counsel, discussions with Mr.

11  Dizon, and reports from the Claims Administrator, I have reached the following

12  conclusions:

13        a.      The Class includes approximately 481 current employees and 764 former

14                employees.

15        b.      As of December of 2009, the hourly wage for Class Members was

16                approximately $9.48.

17        c.      As of December of 2009, the daily wage for Class Members was

18                approximately $75.85.

19        d.      A reasonable estimate of the amount owing to each Class Member who is

20                a former employee and entitled to continuing wages would be

21                $75.85 × 30 days, or $2,275.36.

22        e.      A reasonable estimate of the hourly overtime wage owing to Class

23                Members is $9.48 × 1.5, or $14.22.

24        f.      The Settlement provides for division of the settlement fund among all

25                employees who submit claims for unpaid overtime, with 66.6%

26                ($1,632,366) devoted to payment of overtime wages and 33.4%

27                ($818,634) used to pay continuing wages to former employees.  There

28                were approximately 481 current employees who qualify for

reimbursement of unpaid overtime, along with some 764 former employees who may also have overtime claims.  Again, for the period commencing November 17, 2005, through the date of filing of the Motion for Preliminary Approval [September 17, 2010], there were approximately 764 individuals who qualify as former employees, potentially entitled to continuing wages.

g.   According to the Claims Administrator, there were, in fact, 1,252 total Class Members.  (See Decl. of Markham Sherwood Re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form and Request for Exclusion Form and Report on Claim Forms and Exclusions Received ("Sherwood Decl.") ¶ 3.)

h.   There were 607 Claim Forms submitted by Class Members, all of whom belong to Class A.  Of those 607 claimants, 189 claimants also belong to Class B.  (Sherwood Decl. ¶ 6.)  Plaintiff requests in his Motion that the 16 late Claim Forms be deemed valid and those claimants participate in the Settlement.

i.   There was a 48.5 percent response rate (607 claimants out of 1,252 total class members).

j.   The gross Class A fund is 66.6 percent, or $1,632,366, and the gross Class B fund is 33.4 percent, or $818,634.  Accordingly, the **gross average payment to each member of Class A is approximately $2,689** ($1,632,366 ÷ 607 = $2,689.24), representing 35 days[3] of work, or 189 hours of overtime and time and a half ($2,689.24 ÷ [$9.48 × 1.5] = 189). The **gross average payment to each member of Class B is approximately $4,331** ($818,634 ÷ 189 = $4,331.40).[4]

---

[3] [$2,689.24 average gross recovery to members of Class A] ÷ [$75.85 average daily wage rate] = 35 days or five weeks.

[4] In Plaintiff's Motion for Preliminary Approval, Class Counsel estimated that the gross payments to Class Members would actually be lower than the gross amounts Class

k.      Assuming the Court grants $735,300 in attorneys' fees and costs (30% of the common fund), $15,000 enhancement award to the named Plaintiff, and sets aside $22,102.86 for reimbursement of claims administration fees and costs,[5] then the Net Fund would be $1,678,597.14.  The "Class A" Net Fund would be $1,117,945.70 (66.6%) and the "Class B" Net Fund would be $560,651.44 (33.4%).  Accordingly, the **net average payment to each member of Class A is approximately $1,841** ($1,117,945.70 ÷ 607 = $1,841.75); the **net average payment to each member of Class B is approximately $2,966** ($560,651.44 ÷ 189 = $2,966.41).  The net recovery to Class A members of $1,841 represents 129.5 hours of unpaid overtime at time and a half ($1,841.75 ÷ [$9.48 × 1.5] = 129.5).  The net recovery to Class B members represents 30 days of continuing wages, along with a substantial payment of interest ($2,966.41 ÷ $75.85 daily wage rate = 30 days of wages and interest of $690.91).

6.      The Settlement provides that named Plaintiff Cristino Dizon is permitted to request an enhancement award based upon his individual participation and assistance in the prosecution of the action.  This proposed additional compensation is based upon the services performed prior to settlement in bringing the action, conferring over informal discovery matters, gathering documents, attending an all-day mediation, analyzing punch card information and other payroll records with counsel, and conversing with Class Counsel and other Class members regarding the litigation and the proposed settlement.

---

Members will actually receive.  (See Decl. of Alan Harris in Supp. of Mot. for Conditional Cert. of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator, filed September 17, 2010 [Docket No. 18] at ¶ 11(h)("Since the claims-made response rate in cases of this nature is generally less than 50%, the actual payments to participating class members will be substantially higher than the foregoing projections would suggest, at least a gross payment of $2,600 to each member of the overtime class and a gross payment of at least $2,100 to each former employee who submits a claim.").

[5] See Sherwood Decl. ¶ 9.

Class Counsel believes that the proposed payment of $15,000, or 0.6 percent of the settlement proceeds, is fair, reasonable, and appropriate.   As set forth in the Declaration of Cristino Dizon in Support of Plaintiff's Motion for Final Approval of Class-Action Settlement ("Dizon Decl.") filed herewith, Mr. Dizon met with Class Counsel numerous times in person and by telephone.  The named Plaintiff devoted many hours discussing and reviewing documents relevant to the litigation, not only with Class Counsel but also with his fellow Class members.   (See generally Dizon Decl.)

7.       On October 29, 2010, this Court granted preliminary approval of the Settlement ("Preliminary Approval Order").  The Preliminary Approval Order appointed Gilardi & Co., LLC to act as the Claims Administrator.  Filed and served herewith is the Sherwood Declaration.  The Sherwood Declaration provides that there are 1,252 Class Members.  (Sherwood Decl. ¶ 3.)  The Claims Administrator mailed the "Notice Packets," which included the Class Notices, Claim Forms, and Request for Exclusion Forms to the 1,252 Class Members on or before December 21, 2010.  (Sherwood Decl. ¶ 3.)  The claims deadline was February 4, 2011, forty-five days after the date of mailing of the Notice Packets.  (Sherwood Decl. ¶ 6.)  The Claims Administrator received 591 timely Claim Forms and 16 late Claim Forms for a total of 607 unique Claim Forms.[6] (Sherwood Decl. ¶ 6.)  That represents a 48.5 percent response rate.  Because of the high response rate, the undersigned believes that nearly all, if not all, Class Members received notice either by mail or by word-of-mouth.  In a case of this nature, based on my experience, the claims response rate is very good.

8.       As of March 1, 2011, there have been 35 requests for exclusion filed. (Sherwood Decl. ¶ 7.)  However, 25 of these 35 class members also submitted Claim Forms.[7] (Sherwood Decl. ¶ 7.)  Importantly, no objections to the Settlement have been

---

[6] Plaintiff requests that the Court deem all of the late Claim Forms, postmarked through March 1, 2011, as valid and allow these late claimants to participate in the Settlement.

[7] On March 4, 2011, the Claims Administrator mailed out "cure" letters to the 25 individuals who filed both a Request for Exclusion and Claim Form to determine whether their intention was to participate in the Settlement or opt out.  Those 25 individuals will

1   received by the Claims Administrator.  (Sherwood Decl. ¶ 8.)  Likewise, Class Counsel

2   has not received any objections to the Settlement.

3       9.      Attached hereto as Exhibit 1 are detailed records of the time spent by Harris

4   & Ruble and David Harris in initiating the case, litigating the action in state court,

5   litigating the action in the District Court after removal, attending hearings, preparing for

6   mediation, reviewing thousands of pages of documents, attending mediation, negotiating

7   the settlement, and preparing the settlement documents, preliminary approval, and final

8   approval.  As discussed in detail in the Memorandum of Points and Authorities in

9   Support of Plaintiff's Motion for Award of Attorney's Fees and Reimbursement of Costs,

10  filed and served herewith, Plaintiff's Counsel seeks attorneys' fees and costs in the

11  amount of $735,300, or 30% of the common fund.  The requested fees will include

12  compensation for all additional work in this case, including appearing at the hearing for

13  final approval of the settlement, dealing with any inquiries from Class Members, and

14  attending to related administrative matters.  Of the $735,300 requested award, $4,821.03

15  is for reimbursement of costs and expenses.[8]  The costs and expenses are detailed in

16  Exhibit 1 (pages 55–56) attached hereto.  Accordingly, Plaintiff's Counsel seeks 29.8

17  percent of the common fund for their attorneys' fees.

18      10.     During the course of this case, the following employees of Harris & Ruble

19  and David Harris made substantial contributions:

20          a.      Alan Harris is a graduate of the University of Illinois (AB 1970, JD

21  1974).  He is a member of the bars of Illinois (1974) and California (1989).  In this

22  matter, Mr. Harris spent approximately 285.95 hours in litigation of this case.  As

23  detailed in the Declaration of Peter D. Zeughauser, attached as Exhibit 2 hereto, as

24  _____

25  have 15 days to respond to the "cure" letter and if no response is made by the individual
    by the deadline, then the Request for Exclusion will be rejected and the individual will be
    deemed to have filed a Claim Form and submit to the Release set forth in the Class
26  Notice and Settlement.

27  [8] To date, Class Counsel has advanced $4,821.03 in costs.  However, Class Counsel
    will incur *additional* costs for legal-service fees for hand-delivery of courtesy copies to
    Chambers and travel and hotel fees for attending then Final Fairness hearing, which are
28  not included in the $4,821.03.

of November 2008, the market hourly rate for these services is $800.  In this application, I have utilized a rate of $800.  This rate (as well as the rates of my colleagues, discussed below) has been approved in many class-action employment cases in which Harris & Ruble has been appointed class counsel.

b.     David Harris is co-counsel in this case.  David Harris is a graduate of the University of Colorado, Boulder (BS 1994) and the University of San Francisco School of Law (JD 2001).  He is a member of the California bar (December 3, 2001).  Upon graduating from the University of San Francisco, School of Law, Mr. Harris joined the litigation group in the Palo Alto office of Brobeck, Phleger & Harrison LLP, where he worked from October 2001 through February 2003.  Thereafter, Mr. Harris joined the litigation group in the San Francisco office of Morgan Lewis & Bockius LLP, where he worked from February 2003 through July 2006.  Thereafter, Mr. Harris founded the North Bay Law Group, where he has worked for the past four and one-half years.  Mr. Harris has extensive experience both defending and prosecuting class actions.  Mr. Harris spent 231.5 hours in litigation of this case.  As supported by the Zeughauser Declaration, as of November 2008, the market rate for the services of David Harris was $475.

c.     Abigail Treanor is a graduate of the University of Southern California (BA 2000), where she graduated *magna cum laude*, and the UCLA School of Law (JD 2003).  She is a member of the California bar (December 2, 2003).  Ms. Treanor spent 102.45 hours in litigation of this case.  As supported by the Zeughauser Declaration, as of November 2008, the market rate for the services of Ms. Treanor was $430.

d.     David Zelenski is a graduate of Reed College (BA 1999) and the University of Southern California (JD 2003) (law review).  He is a member of the California Bar (June 28, 2004), and his law-school Note, Talent Agents, Personal Managers, and Their Conflicts in the New Hollywood, 76 S. Cal. L. Rev. 979

(2003), has been cited by the California Supreme Court in <u>Marathon Entertainment, Inc. v. Blasi</u>, 42 Cal. 4th 974 (2008).  In this matter, Mr. Zelenski spent 13.6 hours in litigation.  As supported by the Zeughauser Declaration, the market hourly rate for the services of Mr. Zelenski is $430.

e.     Priya Mohan is a graduate of the University of Michigan at Ann Arbor (BA 2000) and the University of Southern California Law School (JD 2003).  Ms. Mohan is licensed to practice law in the state of California (December 2003).  In this matter, Ms. Mohan spent 6.2 hours providing services.  A reasonable hourly rate for her services is $430.

f.     Jonathan Ricasa is a graduate of the University of California, Los Angeles (BA 1997) and the University of Southern California (JD 2001).  He is a member of the California bar (December 9, 2002).  Mr. Ricasa spent 4.3 hours in litigation of this matter.  As supported by the Zeughauser Declaration, as of November 2008, the market rate for the services of Mr. Ricasa was $475 per hour.

g.     J. Michael Solano is a graduate of Ohio University, Athens, Ohio (BS, Journalism, 1989).  Mr. Solano earned his Paralegal Certification at the Denver Paralegal Institute in 1994.  Mr. Solano has worked as a paralegal and investigator since 1994.  Mr. Solano spent 35.1 hours on this matter.

h.     Albert Chang is a graduate of Westwood Technical College (AA 2002).  Mr. Chang spent 8.4 hours on this matter.  Audrey Hwang is a graduate of Occidental College (BA 2004).  Ms. Hwang spent 0.6 hours on this matter.  A reasonable hourly rate for their services is $125.

Here, attorney rates range from $430 per hour for Ms. Treanor to $800 per hour for Mr. Harris.  The Harris & Ruble rates have been approved by other courts in Los Angeles and San Francisco.

11.     It is my practice and the policy of Harris & Ruble that all employees record their professional time on a contemporaneous basis.  The recitation of professional time and expenses in this Declaration is derived from contemporaneously maintained records.

I regularly reviewed the time and expense records of all employees and those of co-counsel, David Harris.  I have reviewed all of the records attached as Exhibit 1, and I believe them to accurately yet conservatively represent the time productively and necessarily spent in the prosecution of this case.  In connection with the process of administering Harris & Ruble, I have retained the services of an expert in the field, Peter D. Zeughauser, whose Declaration is attached hereto as Exhibit 2.  The hourly rates charged by Harris & Ruble are based on Mr. Zeughauser's expert opinion and on my own understanding of the market rates in Los Angeles, California, from November of 2008.

12.     In this case, Harris & Ruble successfully undertook to secure allegedly owed unpaid overtime, "continuing wages," and other damages under the California Labor Code and Fair Labor Standards Act.  Proving "willfulness" under section 203 and "injury" under section 226 would have presented a tremendous challenge in this case. Furthermore, if the case went forward, Defendant would have opposed class certification and could have argued that the alleged violations and damages would require individualized inquiry, especially with respect to the claims for unpaid overtime and improperly taken rest-and-meal breaks.  Accordingly, from counsel's viewpoint, this case was extremely risky, with a substantial possibility of years of work and no recovery whatsoever.

13.     Recently, in connection with another labor-law class-action settlement, Combs v. Jennifer Convertibles Inc., Case No. CV09-3242 SI (N.D. Cal. 2010), the defendant was represented by Drinker, Biddle & Reath.  After achieving settlement of that case, last week Jennifer Convertibles filed for protection under the bankruptcy laws. In July of 2010, the undersigned was solicited by various firms seeking to assist in the collection process.  I asked them for indications of the applicable hourly rates.  Here is the result of that actual, current survey of hourly rates at firms seeking to assist in the collection process involving employees in the Jennifer case:

| Firm | Rates |
|---|---|
| *Winston & Strawn* | Partners:  $565–$800 |

| Cooley | Junior Partners:  $590–$595 |
| --- | --- |
| | Associates:  $350–$450 |
| | Projected Blended Rate:  $525 |
| | |
| Otterbourg | Partners:  $575–$865 |
| | Associates:  $245–$565 |
| | Paralegals:  $195–$215 |
| | Projected Blended Rate:  $500 |

14.     In an August 22, 2007, article, *The Wall Street Journal* described a current trend in legal fees to rates of $1,000 per hour.  (Exhibit 4 hereto).

15.     In its December 2008 survey, attached hereto as Exhibit 5, the National Law Journal ("NLJ") reported that law firms such as White & Case charged up to $1,260 per hour for its partners, with the average billing rate at $747 per hour.  Similarly, the NLJ reported that, in December of 2008, Dorsey & Whitney had a high-end partner rate of $1,180 per hour.  A sampling of billing rates for associates taken by the NLJ in December of 2008 reveals that, at the Los Angeles office of Manatt, Phelps & Phillips, eighth-year associates bill at $505 per hour, seventh-year associates at $485 per hour, sixth-year associates at $460 per hour, fifth-year associates at $440 per hour, fourth-year associates at $410 per hour, third-year associates at $365 per hour, second-year associates at $325 per hour, and first-year associates at $290 per hour.  (Exhibit 5 hereto).

16.     Recently, in a February 23, 2011, article, *The Wall Street Journal* detailed the climb of attorneys' hourly rates over the $1,000 per hour level.  (Exhibit 6 hereto).

17.     When I retained Peter Zeughauser, I asked him to opine on a proper market-based billing rate for class-action cases and to provide me with insight in setting rates for Harris & Ruble's hourly clients.  Mr. Zeughauser indicates in his Declaration that, for nearly fifteen years, he has "served as a legal management consultant to law firms throughout the United States[ and] . . . ha[s] also consulted with numerous law firms with

offices in Los Angeles and throughout the United States regarding the appropriate amount to charge clients for services rendered by the firms." (Exhibit 2 at ¶ 8.) Mr. Zeughauser's assessment of a "reasonable" hourly rate for Harris & Ruble's attorneys was based directly upon his in-depth knowledge of the prevailing market rates in Los Angeles. I understood and understand that the Zeughauser reference to "reasonable" hourly rates is to rates that are commensurate with the prevailing market rate.

18.    The following is a list of Peter Zeughauser's publications:

Peter D. Zeughauser, Alternative Billing: Clients Aren't Biting, Legal Times, May 1, 2000.

Peter D. Zeughauser, Alternative Reality, The American Lawyer, May 2009.

Peter D. Zeughauser, An Alternative to Alternative Fees, The American Lawyer, Dec. 1996.

Peter D. Zeughauser, Beating the Odds, The American Lawyer, July 2007.

Peter D. Zeughauser, The Beauty Contest: Responding to the RFP, N.Y.L.J., Mar. 14, 1991, at 45.

Peter D. Zeughauser, Beyond the Black Box, The American Lawyer, Oct. 2006.

Peter D. Zeughauser, Conflict Over Conflicts, The American Lawyer, July/Aug. 1997, at 80.

Peter D. Zeughauser, Culling the Laggards, The American Lawyer, Feb. 2003.

Peter D. Zeughauser, Fighting Attrition with Silver Seatbelts and Other Incentives, Texas Law., Oct. 4, 1999, at 22.

Peter D. Zeughauser, Getting Ahead Without Golf, The American Lawyer, Mar. 1999, at 128.

Peter D. Zeughauser, Is Bigger Better, The American Lawyer, Sept. 2002.

Peter D. Zeughauser, Keeping in Touch, The American Lawyer, Nov. 2005.

Peter D. Zeughauser, A Lawyers' Lawyer, The American Lawyer, Jan. 2004, at 51–52.

Peter D. Zeughauser, Lawyers are from Mercury, Clients are from Pluto (1999).

Peter D. Zeughauser, Leading by Serving, The American Lawyer, Dec. 2006.

Peter D. Zeughauser, <u>Making Lemonade</u>, The American Lawyer, May 2008, at 61.

Peter D. Zeughauser, <u>Managing Legal Work for Excellent Work and Improving Outside Lawyer Relationships by Allocating Risks</u>, ACCA Docket, Fall 1994, at 90.

Peter D. Zeughauser, <u>A Midyear Report</u>, The American Lawyer, July 2004.

Peter D. Zeughauser, <u>The New Math: Associate Pay Raises Will Have a Domino Effect on the Entire Legal Industry. Clients Will Build In-House Empires, and Many Firms Will Collapse</u>, Legal Times, May 1, 2000, at 46.

Peter D. Zeughauser, <u>The New World Order</u>, The American Lawyer, Jan. 2002, at 49.

Peter D. Zeughauser, <u>Optimal Organization</u>, The American Lawyer, Mar. 2001, at 63.

Peter D. Zeughauser, <u>Overseeing the End</u>, The American Lawyer, Feb. 2009.

Peter D. Zeughauser, <u>Paring the Partnership</u>, The American Lawyer, Jul. 2002.

Peter D. Zeughauser & Sara Holtz, <u>Partnering Nirvana</u>, The American Lawyer, Nov. 1997, at 36.

Peter D. Zeughauser, <u>Partnering: The Key to Strategic Relationship Building for Clients and Law Firms</u>, L. Governance Rev., Autumn 1996, at 1, 3.

Peter D. Zeughauser, <u>Practice, Practice, Practice</u>, The American Lawyer, Aug. 2004.

Peter D. Zeughauser, <u>Preparing Successful Responses to Requests for Proposals</u>, Win-Win Billing Strategies: Alternatives That Satisfy Your Clients and You, at 211 (Richard C. Reed ed., 1992).

Peter D. Zeughauser, <u>Price & Product:  A Proposal for a Focused ADR Structure</u>, 15 Alternatives to High Costs Litig. 141, 155 (1997).

Peter D. Zeughauser, <u>Proposal That Provides Incentives for Use of ADR by Law Firms</u>, The Metropolitan Corporate Counsel, Jan. 1998, at 34.

Peter D. Zeughauser, <u>The Real Enron Threat</u>, The American Lawyer, May 2002.

Peter D. Zeughauser, <u>Recession Resistant</u>, The American Lawyer, July 2007.

Peter D. Zeughauser, <u>The Revolution Is Over</u>, House Couns., Spring 1996.

Peter D. Zeughauser, <u>Rewarding Leadership</u>, The American Lawyer, Jan. 2008.

Peter D. Zeughauser, <u>Show and Tell</u>, The American Lawyer, Nov. 2003.

Peter D. Zeughauser, <u>THEN . . . Does Your Firm Have What It Takes to Be Recession-Resistant?</u>, Institute of Management & Administration, Mar. 2009, Vol. 2009 No. 3.

Peter D. Zeughauser, <u>Ties That Bind: Collegiality Less Important Than You Think</u>, Institute of Management & Administration, Feb. 2009, Vol. 2009 No. 2.

Peter D. Zeughauser, <u>Time to Buckle Up?</u>, The American Lawyer, Sept. 1999, at 51.

Peter D. Zeughauser, <u>Tower of Billables</u>, 88 A.B.A.J. 14 (Apr. 2002).

Peter D. Zeughauser, <u>A United Front</u>, The American Lawyer, Aug. 2006.

Peter D. Zeughauser, <u>The Use of Alternative Fee Arrangements to Achieve Smart Results and Improve Outside Counsel Relationships</u>, 871 PLI Corp. 47, 50-51 (1994).

Peter D. Zeughauser, <u>Using Alternative Fee Arrangements to Improve Client Relationships, Law Firm Profitability and Results</u>, Legal Econ., Apr. 1997, at 22.

Peter D. Zeughauser, <u>What I've Seen and Heard</u>, The American Lawyer, Mar. 1996, at 54.

Peter D. Zeughauser, <u>What's in a Name? Plenty</u>, The American Lawyer, Apr. 1996, at 44.
Peter D. Zeughauser, <u>Why England Slept</u>, The American Lawyer, Sept. 2003.

Peter D. Zeughauser, <u>Your Future Is at Stake</u>, The American Lawyer, May 2003, at 49.

Peter D. Zeughauser & Ron Beard, <u>Rewarding Leadership</u>, The American Lawyer, Jan. 2008, at 59, 59–60.

19.     Defendant hired experienced labor law counsel in its defense of this action—Littler Mendelson P.C.  Attached hereto as Exhibit 3 is a portion of Littler Mendelson P.C.'s website.

I have read the foregoing, and the facts set forth herein are true and correct of my own personal knowledge.  Executed March 4, 2011, in the County of Los Angeles, State of California.

_____
/s/
Alan Harris